Motion for En Banc Rehearing in Cause No









 

Motion
for En Banc Rehearing in Cause No. 14-00-00173-CV Granted, Opinion of August
23, 2001 Withdrawn and Consolidated for En Banc Review with Cause No.    14-00-00580-CV; Judgment in Cause No.
14-00-00173-CV Affirmed, Judgment in Cause No. 14-00-00580-CV Reversed and
Remanded, and Majority and Dissenting Opinions filed November 21, 2002. 

 

 

In The

Fourteenth Court of Appeals

 

NO. 14-00-00173-CV

 

CHESAPEAKE OPERATING, INC., Appellant

 

V.

 

NABORS DRILLING USA, INC., Appellee

 



 

On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 4251JG98-1

 



 

NO. 14-00-00580-CV

 

NABORS INDUSTRIES, INC., NABORS DRILLING USA, INC.,
NABORS LOFFLAND DRILLING CO., AND NABORS ENERGY SERVICES, INC., Appellants

 

 

V.

 

 

CHESAPEAKE OPERATING, INC. AND CHESAPEAKE ENERGY CORP., Appellees

 



 

On Appeal from the 11th District Court

Harris
County, Texas

Trial Court Cause No. 98-05525

 



 

 








E N   B A N C  
M A J O R I T Y   O P I N I O N

Two
personal injury claims emerged from a drilling site in a Louisiana wood.  Both followed the strangely well-worn path to
trial courts in Texas.  There, the tangle
of Texas and Louisiana oilfield indemnity statutes led two very experienced
trial judges to split results, and produced a similar split in this Court on
both appeals.  With the help of a
specially appointed eleventh justice, we find Texas law has the better claim,
and follow it for the reasons described below.

The
applicable facts are undisputed.  In
December 1996, Chesapeake Operating, Inc. contracted with Nicklos-Hinton
Drilling Company to drill an oil well in Vernon Parish in western
Louisiana.  Less than a month laterCbefore any injuries occurredCNabors Industries acquired Nicklos-Hinton, and all rights and obligations under the
contract were assigned to Nabors Drilling USA, Inc.
(with Chesapeake=s consent).  Nabors and Nicklos-Hinton were
both Texas corporations, Chesapeake an Oklahoma corporation.  It appears from the contracts and
correspondence that each party negotiated and signed these agreements in its
home state.  

The contract was a standard form daywork drilling contract supplied by the International
Association of Drilling Contractors (IADC). 
It contained mutual indemnity provisions protecting each party against
suits by the other=s employees or subcontractors, regardless of who was at
fault.[1]  Each party agreed to obtain $1 million in
insurance to back up these indemnities. 
The contract also contained a AGoverning Law@ paragraph in which the parties
agreed that:

This
contract shall be construed, governed, interpreted, enforced and litigated, and
the relations between the parties determined in accordance with the laws of  Texas  .

[blank typed-in in
original]. 








Chesapeake
hired several subcontractors to perform drilling-related services at the well,
including Reeled Tubing, Inc. (ARTI@), a company based in Louisiana, and Quality Pressure Testing
(AQPT@), a Texas company.  On February 15, 1997, Danny Alms, a Texas
resident employed by RTI, injured his shoulder and back while working at the
well.[2]  Four days later, Dennis Fritz, a Texas
resident employed by QPT, slipped, fell, and suffered injuries at the
well.  

From
this common starting point, the paths of Alms and Fritz diverged.  Fritz filed suit against Chesapeake, Nabors, and others in Harris County, Texas; Alms sued
Chesapeake, Nabors, and others in Brazoria County,
Texas.  Since both men worked for
Chesapeake=s subcontractors, Nabors
filed cross-actions against Chesapeake in both suits seeking indemnification
for all liability and defense costs incurred. 
In nearly identical motions, Nabors moved for
summary judgment on the cross-claims.  

The Alms
court applied Texas law, granted Nabors= indemnity claim, and severed that
claim from the rest of the suit for this appeal.  The Fritz court first tried the
underlying claims (resulting in a take-nothing judgment against Fritz),[3]
then applied Louisiana law, and denied Nabors= indemnity claim for defense costs.








On
appeal, a panel of this Court initially reversed the Alms court.  Thereafter, Nabors= appeal in Fritz was submitted
to a different panel (without mention by either party that an identical case
was pending), and Nabors moved for rehearing in Alms.[4]  We granted Nabors= motion for rehearing, consolidated
the two appeals, and now withdraw the panel opinion and issue this en banc
opinion.  Our review of the trial courts= opposite rulings on essentially the
same summary judgment evidence is de novo.  Minnesota Mining & Mfg. Co. v. Nishika Ltd., 955 S.W.2d 853, 856 (Tex. 1996) (stating
which state=s law governs is a question of law).

I.  The Purpose of Indemnities

Before
considering each state=s indemnity laws, we consider briefly the clauses they
limit.  At first glance, it appears
suspect that an innocent party would agree in advance to pay the costs of a
liable party, no matter what happens. 
Yet indemnity clauses are widespread in oilfield contracts (hence their
inclusion in IADC form contracts).  Both
operators and drilling contractors have urged the Texas Legislature to
encourage indemnity provisions under certain conditions.[5]  A comparison with situations in which there
is no indemnity suggests why.  

Drilling
sites, of course, can be hazardous places. 
When injuries occur, it is often difficult to tell who is at fault due
to the complex nature of the enterprise, the large number of subcontractors
usually involved, difficult questions regarding the right to control,[6]
and the intersection of premises liability and agency law in drilling
operations.[7]  As a result, there are usually two disputes
to resolveCone pitting the injured party against
all those potentially responsible, and another among the defendants to allocate
fault and the resulting burden of any settlement or judgment.  








Mutual
indemnity provisions (if routinely enforced) eliminate the latter dispute.  In the standard drilling contract, they
allocate costs and liability according to who hired the injured party, not who
caused the accident.  This eliminates
liability and coverage disputes between drilling operators and
contractors.  In the event of a lawsuit,
they need not file cross-actions for contribution, conduct discovery between
themselves, or even hire separate lawyers. 
This may result in a Aunited front@ against a plaintiff, but it may also work to a plaintiff=s advantage by shifting money from
duplicative defense costs to settlement funds.

But
indemnity provisions often fall short of this purpose.  This Court and others have been kept busy in
recent years resolving indemnity disputes.[8]  In the choice-of-law analysis that follows,
it must be kept in mind that these clauses will never accomplish their primary
purpose as long as there is substantial uncertainty about whether they will be
enforced.

II.  The Conflicting Indemnity Laws

The
parties disagree whether their indemnity clauses should be judged by Texas or
Louisiana law.[9]  They also disagree whether it makes any
difference.  As we need not decide which
law applies if it makes no difference, we first review the law of each state.

A.  Texas Law








Under
Texas law, oilfield indemnity clauses are generally void.  Tex. Civ. Prac. & Rem. Code ' 127.003.  But there are several exceptions, including
one for indemnities that are mutual and supported by
liability insurance.  Id. ' 127.005; Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 346 (Tex.
2000).  Additionally, indemnity clauses
must meet certain fair notice requirements. 
Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 509
(Tex. 1993).  Chesapeake does not dispute
that these clauses meet the former, but argues they fail to comply with the
latter. 

To give
fair notice, an exculpatory indemnity clause must be express and
conspicuous.  Id. at 508B09. 
Compliance with these requirements is a question of law for the
court.  Id. at 510.  The operative indemnity language here meets
the Aexpress@ requirement, as it is identical to
words the Texas Supreme Court has approved. 
See Maxus Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 56
(Tex. 1991) (holding indemnity Awithout limit and without regard to the cause or causes
thereof or the negligence of any party or parties@ met express negligence test).[10]  The second requirementCconspicuityCis immaterial if Chesapeake had
actual knowledge of the indemnity clauses. 
Cate v. Dover Corp., 790 S.W.2d
559, 561B62 (Tex. 1990).  Chesapeake did, because its representative
initialed a specific change to the indemnity provisions in this contract.  We find Nabors= indemnity claim would be enforceable
under Texas law.

B.  Louisiana Law

By a
similar statute, Louisiana declares oilfield indemnity clauses void and
unenforceable if they operate in favor of a negligent party.  La.
Rev. Stat. Ann. '  9:2780(B) (West
1991).  Nabors
argues this statute applies only to contractors domiciled in Louisiana, and
thus does not apply here.  But the
statute=s language is not so limited.  Id. (providing that A[a]ny
provision contained in, collateral to, or affecting an agreement pertaining to
a well for oil, gas, or water . . . is void and unenforceable@).

In the Fritz
case, the jury found Nabors negligent (though
only twenty percent at fault).  In the Alms
case, we presume a jury may find Nabors
negligent, since Nabors= motion failed to prove it was not
negligent as a matter of law.  In either
case, Nabors= indemnity claim would be
unenforceable under Louisiana law.

 








C.  Choosing the Law 

Because
of these differences, this appeal turns on which state=s law applies. In determining the law
applicable to oilfield indemnity clauses, Texas courts look to sections 187 and
188 of the Restatement (Second) of Conflict of Laws.  Maxus, 817 S.W.2d at 53.  As relevant for this appeal, those sections
provide:

$                  
In a contract without
an express choice of law, indemnity is governed by the law of Athe state which, with respect to that issue, has the
most significant relationship to the transaction,@
applying the principles stated in Restatement section 6 to the contacts listed
in Restatement section 188(2).  See
Maxus, 817 S.W.2d at 53; Restatement
(second) of conflict of laws ' 188
(1971).

 

$                  
In
a contract with an express choice of law, indemnity is governed by the
law chosen by the parties unless (1) there is a state with a more significant
relationship to the transaction (applying section 188), and (2) applying
the chosen law would contravene a fundamental policy of that state, and
(3) that state has a materially greater interest in the determination of the
particular issue.  See DeSantis v. Wackenhut
Corp., 793 S.W.2d 670, 677B78 (Tex. 1990); Restatement
' 187(2)(b).[11]
            

Because the parties here
expressly chose Texas law, we apply the latter provision.  But because the latter incorporates the
former, we begin our analysis with it.

III.  Section 188: 
The Most Significant Relationship

A.  The Contacts 

Restatement
section 188 provides that Aan issue in contract [is] determined by the local law of the
state which, with respect to that issue, has the most significant relationship
to the transaction and the parties,@ taking into account the following
five contacts:

(1) the place of contracting,

(2) the place of negotiation of the
contract,








(3) the place of performance,

(4) the location of the subject matter of
the contract, and

(5) the
domicile, residence, nationality, place of incorporation and place of
business       of the parties.   

Restatement ' 188(2).

Chesapeake
argues the first, second, and last contacts are inconclusive because they are
split between two statesCTexas and Oklahoma. 
But we are not comparing the law of Texas and Oklahoma, only Texas and
Louisiana.  While only one party is
domiciled in Texas and negotiated and signed the contract there, that is one
more than can be said for Louisiana. 
Moreover, the parties agree thatCwith respect to enforcement of these
indemnitiesCthe laws of Texas and Oklahoma would
reach the same result.[12]  Thus, considering Texas to be the state of
domicile, place of business, and place of negotiation and contracting complies
with (or at least does no harm to) Oklahoma=s interests as well.

The
third and fourth contactsCthe place of performance and the location of the subject
matter of the contract[13]Care more difficult to pin down.  In Maxus Exploration Co. v. Moran Bros.,
the Texas Supreme Court considered what law applied to an oilfield indemnity
clause when the parties made no choice of law in their contract.  817 S.W.2d at 53.  The court held the place of performance was
of Aparamount importance@ in service contract cases.  Id.; see also Restatement ' 196.








But as
the court noted, there are two possible meanings of Athe place of performance@: (1) where the drilling services
were performed, and (2) where the indemnity obligation was performed (by
defending against the injured employee=s suit).  The main performance contemplated by the
drilling contract as a whole is the former; but the only disputed performance
involved in the two cases before us is the latter.  The court and the Restatement tell us that, on
occasion, Ait is more appropriate to consider
the disputed contractual issue separately from the contract as a whole.@ 
Maxus, 817 S.W.2d at 54; see Restatement Title C 
Particular Issues, Introductory Note, at 631B32. 
Because in Maxus the performance of both was in Kansas, the court
did not have to decide the issue.

But we
do.  Here, the drilling took place in
Louisiana, but the suing took place in Texas. 
Any judgment (in the Alms case) would be entered in Texas, the
attorneys= fees (sought in both cases) were
incurred in Texas, and indemnification between Nabors
and Chesapeake would be made to or from Texas. 
Thus, we must decide whether the state with the most significant
relationship should be determined by looking to the contract as a whole or the
indemnity clauses that are disputed.  








We
believe the latter is the case.  While
the Texas Supreme Court has not addressed this question again with respect to
Restatement section 188, it recently construed identical language in the
Restatement concerning choice of law in a tort action.  Compare Restatement
' 145(1) (AThe rights and liabilities of the
parties with respect to an issue in tort are determined by the local law of the
state which, with respect to that issue, has the most significant relationship
to the occurrence and the parties@) with Restatement ' 188(1) (AThe rights and duties of the parties with respect to an issue
in contract are determined by the local law of the state which, with respect to
that issue, has the most significant relationship to the transaction and the
parties@). 
In Hughes Wood Products, Inc. v. Wagner, the supreme court found
the lower court=s holding (that Texas had the most significant relationship
to the parties= business as a whole) was
immaterial.  18 S.W.3d 202, 205 (Tex.
2000).  The proper analysis, the court
held, must Aconsider which state=s law has the most significant
relationship to the particular substantive issue to be resolved.@[14] 
Id.  (emphasis in original).


In this
appeal, the Aparticular substantive issue to be
resolved@ is whether these indemnity clauses
are enforceable.  Nabors= claim in both cases is for liability
and legal services incurred in Texas, not for drilling services performed in
Louisiana.  Considering only the
particular issue in dispute, the place of performance of that obligation was in
Texas.[15]

Chesapeake
urges us to adopt the other option in MaxusCthat the place of performance is the
state where the drilling services were performed.  This whole-contract approach to place of
performance makes the particular substantive issue irrelevant.  Thus, if this lawsuit concerned financing,
insurance coverage, workers= compensation, taxes, transportation, or any other side
agreement in the parties= drilling contract, the result would always be the sameCLouisiana law governs it all.








Our
dissenting colleagues adopt this approach, arguing it will make the law more
predictable because contracting parties know in advance where they are
drilling, but not where they will be sued. 
We doubt it was a surprise to these oil companies that an injured Texas
resident was likely to sue a Texas company in Texas.[16]  But even if this assumption about the parties= expectations is correct here, it
certainly will not always be the case.  Many oilfield
contracts contemplate work in different jurisdictions, or consist of a master
service contract that applies to many separate work orders issued over the
years for different places.[17]  Others concern services that have no single
place of performanceCsuch as the transportation of oilfield personnel and products
by truck, boat, helicopter, and pipeline. 
In such cases, the Aplace of performance@ suddenly becomes much less
predictable, and subject to after-the-fact arguments about where Amost@ of the contractual services were
performed. 

Additionally, using Apredictability@ to determine the place of
performance jumbles the Restatement analysis. 
The proper approach is to determine the state contacts (such as place of
performance) and then
apply the Restatement=s general principles (such as certainty,
predictability, and uniformity).  Using a
single principle to define the state contacts and to analyze them makes
it serve as both cart and horse.








A narrow focus on only one factor and one
part of the contract (the place of performance of drilling) is at odds with the Restatement=s approach, which requires a broad
consideration of all contacts and interests.  The place of performance is only one factor
in the choice-of-law analysis, and as discussed in the next section, in our
view it is not necessarily determinative or even the most important factor.  What is determinative is which state has the
most significant relationship with respect to the indemnity issue.  In this case, performance of the drilling was
completed a long time ago.  For the last
four years, the only fight has been over performance of the indemnities, a
fight conducted entirely in Texas.  We do
not see why Louisiana should set the rules for that fight.[18] 

B.  Evaluating the Contacts

Next, we
must evaluate these contacts according to their relative importance with
respect to the particular issue in the cases before us.  See 
Restatement ' 188(2).  As noted, the domicile of the parties, place
of contracting, and place of negotiation all point to Texas; so do the
remaining contacts with respect to the particular issue to be resolved (rather than
the contract as a whole).  We
evaluate these contacts not by their number, but by their quality.  Minnesota Mining & Mfg. Co., 955
S.W.2d at 856.

As
discussed in section IV(A) below, the purpose of both the Texas and Louisiana
oilfield indemnity statutes is to prevent large oilfield companies from
imposing contracts of adhesion on smaller oilfield contractors.  Obviously, a state has a stronger interest in
protecting its own citizens than a neighboring state does.  Accordingly, Athe state where a party to the
contract is domiciled has an obvious interest in the application of its
contract rule designed to protect that party against the unfair use of superior
bargaining power.@  Restatement ' 188 cmt.
c.  State and federal courts appear generally to
follow this principle, applying the law of the parties= domiciles when considering
conflicting indemnity laws.[19] 









In the
most recent and most similar case available, the United States Court of Appeals
for the Fifth Circuit held that the domicile of the contracting parties is
determinative in an oilfield indemnity choice-of-law analysis.  See Roberts v. Energy Dev. Corp., 235 F.3d
935, 943 (5th Cir. 2000).  In that caseClike oursCthe oilfield services and injury
occurred in Louisiana, and the parties= contract chose Texas law.[20]  The court disregarded the parties= law choice because indemnity was
sought against a company domiciled in Louisiana.  Id. at 942B43. 
The court distinguished one of its previous decisions that applied Texas
law to similar facts, noting the difference was that the contracting parties in
the prior case were both domiciled in Texas. 
Id. at 943.[21]








In DeSantis v. Wackenhut
Corp., the Texas Supreme Court appeared to follow this principle, applying
the law of the Texas employee=s domicile because Texas law (which restricted noncompetition agreements) was intended to protect
him.  793 S.W.2d at 679.  But in Maxus, the court refused to
apply Texas law to construe oilfield indemnities, even though both companies
were domiciled in Texas.  817 S.W.2d. at
57.  The court instead applied the law
where the contract was performed (both the drilling services and the subsequent
liability suit), stating it was more plausible the Texas indemnity statute was
intended to protect contractors drilling wells in Texas rather than
Texas-domiciled contractors when drilling out of state.  Id. The opinion does not address the
cases or Restatement commentary that emphasize domicile.  

We do
not think the result in Maxus applies here for two reasons.  First, the Restatement contacts Aare to be evaluated according to
their relative importance with respect to the particular issue.@ 
Restatement ' 188(2) (emphasis added).  In Maxus, the place of performance
outweighed domicile because all services (drilling and indemnity) were
performed out of state.  Here, the
indemnity services and domicile are both in Texas; Maxus does not
suggest the drilling location alone outweighs these two combined, especially
with respect to the indemnity issue in dispute.

Second,
strong policies underlying contract law (discussed in the next section)
operated differently in Maxus. 
There, the contracting companies failed to use the most current drilling
contract form, and as a result the indemnity clauses they used were
unenforceable.  See 817 S.W.2d at
52, 56 (noting amendments without expressly finding provisions invalid under
Texas law).  The supreme court may have
favored Kansas law (which would enforce them) on the principle that companies
should be held to their bargains.  Here,
reaching out to Louisiana law would have the opposite effect, relieving
Chesapeake of the indemnity it promised to pay and the insurance coverage it
promised to provide.  








By
giving special weight to domicile, we do not attribute a discriminatory intent
to either statute any more than our dissenting colleagues do by construing the
statutes territorially.  Although they
say these laws are defined by Ageography@[22] and directed toward Aoilfield operations within [each
state=s] territorial boundaries,@[23] in fact the scope of neither statute
is so limited.  The actual terms of each
statute contain no limitations whatsoever, and thus apply to all oilfield
contracts everywhere, regardless of where the company or well is located.  The choice-of-law question is whether and
under what circumstances these statutes can extend that far; by presuming a
territorial reach, our colleagues presume the answer.[24]

The
Restatement does not presume that state laws stop at the state line; instead,
it focuses on which state=s interests are the Amost significant.@ 
A state without oil or oilfield companies may have an economic interest
in curbing unfair bargaining in oil-producing states, but its interest is
unlikely to be the most significant.  We
do not discount Louisiana=s interest in fair bargaining between foreign companies.  But the relationship between those companies
and the states where they regularly conduct such bargaining is simply more
significant than that of any number of other states where they may be operating
for the moment.  

Again,
we do not make domicile the sole test; like any other contact, it cannot be
taken out of context.  It is interesting
to speculate whether Louisiana law would apply if Alms or Fritz had sued
somewhere else, or if the only Texas domiciliary was an assignee or a
subcontractor, but we need not decide those cases here.  Nor should a concern for the Amischief@ domicile may hypothetically create
cause us to overlook the mischief that is right before our eyesChaving drafted indemnity clauses and
purchased insurance to meet Oklahoma and Texas law, the losing party now wants
to undo the result.              

C. 
Considering the Principles of Restatement Section Six

Finally,
we must apply to these weighted contacts 
the principles listed in Restatement 
section 6.  See Maxus, 817
S.W.2d at 54; Restatement ' 188(2).  Those principles are:

(a) the
needs of the interstate and international systems, 

(b) the
relevant policies of the forum, 

(c) the
relevant policies of other interested states and the relative interests of
those        states in the determination
of the particular issue, 

(d) the
protection of justified expectations, 

(e) the
basic policies underlying the particular field of law, 








(f)
certainty, predictability and uniformity of result, and 

(g) ease in the determination and application of the
law to be applied.  

Id. at ' 6. 
In conducting this analysis, we put aside the parties= explicit choice of Texas law, but
certainly not the rest of their contract. 
See Restatement ' 188 cmt. b
(recognizing that parties expect Athe provisions of the contract would
be binding upon them,@ and that this expectation is of Aconsiderable importance@).[25]

For the
reasons already discussed, we believe the relative policies and interests of
Texas and Louisiana (the second and third principles) tip toward Texas, as the
state with the strongest interest in fair bargaining by resident
businesses.  Moreover, Texas has a Astrong commitment to the principle of
contractual freedom.@  Churchill
Forge, Inc. v. Brown, 61 S.W.3d 368, 371 (Tex. 2001). 
We believe this interest in freedom of contract (and its
indispensable partnerCcontract enforcement) outweighs any interest Louisiana has in
voiding a contract between foreign companies regarding foreign litigation.  And as noted at the outset, the benefit Texas
oilfield companies (and Texas appellate courts) gain by avoiding indemnity
disputes is lost if enforcement is rendered uncertain every time a work order
calls for crossing a state line.

The
justified expectations of the parties and the policies underlying contract law
(the fourth and fifth principles) also point to Texas.  In contract cases, these two usually agree,
as A[p]rotection
of the justified expectations of the parties is the basic policy underlying the
field of contracts.@  Restatement 
' 188 cmt.
b; DeSantis, 793 S.W.2d at 677.  In this case, the parties explicitly drafted
indemnity provisions and purchased insurance to meet Texas law.  Neither party expected Louisiana=s indemnity statute to apply,
unless they had their fingers crossed when they signed.  In such circumstances, it would be Aunfair and improper@ to allow Chesapeake to appeal to
Louisiana law to undo the parties= bargain.  See Restatement
' 6 cmt. g.








Our
dissenting colleagues declare these expectations Aunjustified@ because the parties should have
known Louisiana law would apply (though a majority of the Court holds it does
not).  In other words, this should have
been easy for the parties to see, though it has not been so for us.[26]  At most, the parties could have known that
Louisiana law might apply, but this does not explain why any other
expectation was not Ajustified.@  We would not be
protecting the parties= justified expectations by converting this possibility into a
certainty, meanwhile converting mutual promises of $1 million in insurance
coverage into a mere Ahope@ or Adesire.@ [27]

This is
not a case in which the parties drafted a contract they knew to be illegal;
such a mens rea
would require law that is clearer than this has proved to us.  When the law of two states might apply and
the law of one would void a contract, the Restatement does not prohibit parties
from trying to avoid that result.  In the
only two illustrations included in section 188, hypothetical parties travel to
foreign states to enter or enforce contracts they could not at home; yet both
illustrations suggest the contracts should be enforced (at least under some
conditions) to protect the Ajustified@ expectations of the parties. 
See Restatement ' 188 cmt.
e, illus. 1B2. 








Certainty,
predictability, and uniformity and the needs of the interstate and international
systems (the first and sixth principles) also support application of Texas
law.  Industry and commerce cannot
operate in a climate that allows a contracting party who makes a bad bargain to
change the terms of a deal at its option. 
Additionally, while Louisiana law has its occasional peculiarities, they
pale in comparison to those of foreign lands where oilfield companies sometimes
drill.  If Chesapeake is correct that the
latter=s law always trumps the parties= contract, it will be expensiveCsometimes even impossibleCto know what the parties= contract is.

Finally,
the Maxus court held that ease of determination and application of law
(the seventh principle) points to applying the law of the state where the
injured party brought suit.  817 S.W.2d
at 57.  Like place of performance of the
indemnities, this cannot be known with certainty until the injured party files
suit.  Nevertheless, it is one of the
principles we must apply, and like all the others points to Texas in the cases
before us.  

Chesapeake
urges us to adopt a strict rule that always applies the law of the state where
the well is locatedCa Alex loci drilling situs.@ 
The argument is tempting, if only because it would be much easier to
apply than the factors, principles, and balancing of the Restatement.  But as discussed above, that will not always
be the case.  More important, it is not
Texas law.  For better or worse, the
Supreme Court has adopted the Restatement approach, and we must follow the
balancing act it requires.  

Finally,
while the Restatement analysis may create uncertainty in some cases, it
certainly did not do so here.  Chesapeake
can hardly be shocked that Texas law applies, as the indemnity clauses and
insurance coverage were specifically drafted to meet Texas law.  Moreover, if uncertainty is to be decisive,
that goal is often best attained (as the Restatement itself states) by letting
the parties choose the law that governs their relations, and giving judicial
respect to that choice.  See Restatement ' 187 cmt.
e; DeSantis, 793 S.W.2d at 677.  To that important duty we now turn.

IV.  Section 187: Contravening Material Policies

Although
Texas has the most significant relationship to this dispute, we believe the
result would be the same if Louisiana were awarded that distinction.  Because the parties chose Texas law in their
contract, that choice can be disregarded only if it contravenes a fundamental
policy of Louisiana, and Louisiana has a materially greater interest in
the determination of this indemnity issue than Texas does.  See Restatement
 ' 187(2)(b).  For several reasons, we believe neither is
the case.








A.  Contravening Identical Policies

We do
not have to guess the public policy behind the competing indemnity statutes
here, because each legislature stated it expressly:

$                  
AThe [Texas]
legislature finds that an inequity is fostered[28]
on certain contractors by the indemnity provisions in certain agreements
pertaining to wells for oil, gas, or water or to mines for other minerals.@ 
Tex. Civ. Prac. & Rem. Code ' 127.002(a).

 

$                  
AThe [Louisiana] legislature finds that an inequity is
foisted on certain contractors and their employees by the defense or indemnity
provisions, either or both, contained in some agreements pertaining to wells
for oil, gas, or water, or drilling for minerals.@ La. Rev. Stat. Ann. ' 9:2780(A) (West 1991).

 

We assume these policies
are Afundamental@ (as required by the Restatement),
especially as each state has taken the unusual step of stating it
explicitly.  Nevertheless, because the
policies are identical, we do not see how one can contravene the other.  

It is
true the statutory cure adopted by each state is different, although the stated
policies are identical.  But according to
the Restatement the statutes are not in fundamental conflict merely because
they would lead to different results.  See
Restatement ' 187 cmt.
g.  The test is whether the chosen law
contravenes a state policy, not the outcome in a particular
case.  See DeSantis,
793 S.W.2d at 680.  A choice-of-law
clause is relevant only if it will result in a different outcome; if
that difference alone is enough to make policies contravene, then choice-of-law
clauses will never be enforced.[29]








The
Restatement test requires more than this. 
A contractual choice of law should be disregarded only if it would Athwart or offend the public policy@ of Louisiana, not if it would merely
require a different result.  See Monsanto
Co. v. Boustany, 73 S.W.3d 225, 229 (Tex.
2002).  If the policies in each state are
the same, different approaches do not contravene them just because one is
somewhat stricter than the other.  See
Minnesota Mining & Mfg. Co., 953 S.W.2d 733, 736B37 (holding different commercial
warranty laws did not contravene one another as both sought to balance rights
of manufacturers and consumers).   

Our
dissenting colleagues attempt to create a fundamental conflict by overstating
the extent of Louisiana=s law.  Louisiana law
is not absolute or unqualifiedCnon-negligent parties can enforce indemnities to their hearts= content, and settling parties may
attempt to do the same.[30]  The only difference between Texas and
Louisiana law is how best to limit the abuse of indemnities.  Arguments can be made about which state=s approach is best.[31]  But because both states= policies are identical, if the Texas
approach thwarts Louisiana public policy, then it must also thwart its own.  We decline to hold that the Texas Legislature
was either mistaken or disingenuous in the approach it selected to address the
stated policy.

B.  Weighing Material Interests








Nor do
we believe Louisiana has a materially greater interest than Texas in policing
the bargain made by these oilfield companies. 
As the policy of both statutes is to regulate contractual negotiations,
the interests of Texas and OklahomaCwhere they actually conducted those
negotiationsCis simply more significant than that
of LouisianaCwhere they did not. 

For
Louisiana to have a materially greater interest, there would have to be some
connection between unfair bargaining (the policy of both statutes) and the
location of the well (Louisiana=s only contact).  The
only connection suggested is the protection of injured workers.[32]  But the Louisiana Legislature explicitly
stated its public policy in this statute, and that was not it.  Moreover, this judicially-imagined policy
represents a rather fundamental misunderstanding of what indemnities do.  Indemnities do not release a company
from liability to an injured plaintiff; instead, they add a potential
source of recovery should a liable company prove insolvent.  Logically, a state that aims to make work
sites safer by limiting indemnities should also prohibit workers= compensation or employer=s liability insurance for the same
reason, as they have the same effect. 
When weighing fundamental policies, we cannot unfairly tip the scales by
tossing on one side fundamental policies that do not apply.              Another
court has suggested the Louisiana statute may have the effect (though it is not
the stated purpose) of opening up markets for Louisiana companies who will not
or cannot sign indemnity contracts.[33]  But it appears that some Louisiana companies
regularly sign indemnity contractsCoften designating non-Louisiana law
that would enforce themConly to attack them successfully later as violative
of Louisiana=s statute.[34]  By giving special weight to the law of a
party=s domicile, we place no barrier in
the path of Louisiana companies that wish to continue this practice.

 








Texas,
too, has several material interests that might be considered if policies beyond
those explicitly stated come into play. 
Texas has a strong interest in enforcing its residents= contracts, even those concerning
work to be done out of state.  In Maxus,
the supreme court concluded A[w]e do not read the [Texas indemnity] statute to have an
extraterritorial reach, absent some agreement between the parties.@ 
817 S.W.2d at 57 (emphasis added). 
In English usage, the statement Aour rule is A, absent condition B@ strongly implies Aour rule is not A in the presence
of condition B.@  To give effect to
what the Maxus court said, Chesapeake=s territorial arguments must yield to
its own agreement.[35]

Finally,
by requiring indemnities that are mutual and supported by adequate insurance,
Texas law increases the probability that injured parties may recover not just a
paper judgment, but one that is collectible. 
Fritz and Alms were not the first Texas residents to be injured while
working on a drilling site in Louisiana, and probably will not be the
last.  A plaintiff with a strong
negligence case against a financially weak contractor is clearly better off if
that contractor is backed up by an indemnitor and its
insurance.

V.  Conclusion

Little
need be said about the importance of oilfield services to this state, its
economy, and its people.  Texas indemnity
law allows companies to substitute insurance in place of uncertain liability,
thus limiting their costs and making them more predictable.  Getty Oil Co. v. Ins. Co. of  N. America, 845 S.W.2d 794, 804 (Tex.
1992).  Disregarding indemnity clauses
(and the insurance  agreements behind
them) by applying another state=s law does just the opposite. 
In applying Texas law to the two cases before us, we recognize the state=s interest that indemnity clauses
meet certain requirements, and are enforced when they do.  Because these sophisticated parties drafted a
contract to meet Texas law, and deemed it to apply, we believe they should have
what they bargained for.








For
these reasons, we affirm the summary judgment for Nabors
in Cause Number 14-00-00173-CV (Alms), and we reverse and remand the
judgment against Nabors in Cause Number
14-00-00580-CV (Fritz).    

 

/s/            Scott
Brister

Chief Justice

 

 

Judgment
rendered and Majority and Dissenting Opinions filed November 21, 2002.  (Justices Anderson, Fowler, Seymore, Guzman, and Senior Justice McCloud joined the
majority opinion.  Senior Justice Wittig filed a dissenting opinion in which Justices Yates,
Hudson, and Frost joined.  Justice Frost
filed a dissenting opinion in which Justice Hudson and Senior Justice Wittig joined.[36]  Justice Edelman filed a dissenting opinion). 

 

En
Banc.

 

Publish
C Tex. R. App.
P. 47.3(b).

 








Motion for En Banc Rehearing in Cause No.
14-00-00173-CV Granted, Opinion of August 23, 2001, Withdrawn, and Consolidated
for En Banc Review with Cause No. 
14-00-00580-CV; Judgment in Cause No. 14-00-00173-CV Affirmed, Judgment
in Cause No. 14-00-00580-CV Reversed and Remanded, and Majority and Dissenting
Opinions filed November 21, 2002.

 

 

In The

Fourteenth Court of Appeals

 

NO. 14-00-00173-CV

 

CHESAPEAKE OPERATING, INC., Appellant

 

 

V.

 

 

NABORS DRILLING USA, INC., Appellee

 



 

On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 4251JG98-1

 



 

NO. 14-00-00580-CV

 

NABORS INDUSTRIES, INC., NABORS DRILLING USA, INC.,
NABORS LOFFLAND DRILLING CO., AND NABORS ENERGY SERVICES, INC., Appellants

 

 

V.

 

 

CHESAPEAKE OPERATING, INC. AND CHESAPEAKE ENERGY
CORP., Appellees

 



 

On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 98-05525

 



 








E N   B A N C  
D I S S E N T I N G  O P I N I O N

 

The
narrow and sole disagreement among the members of our court is whether section
187(2)(b) of the Restatement (Second) of
Conflict of Laws (1971) calls for the application of Louisiana law.[1]  We believe Louisiana law, not the law of a
forum selected by the litigants, should regulate indemnity obligations arising
from accidents occurring wholly within Louisiana and arising solely out of the
operation of Louisiana wells. Because the majority opinion reads discriminatory
intent into both Texas and Louisiana=s anti-indemnity statutes, conflicts with the supreme court=s
controlling decision in Maxus Exploration Co. v. Moran Bros., Inc., 817 S.W.2d
50 (Tex. 1991), disregards both Louisiana=s greater interest in regulating its own dangerous activities
and its disparate public policy, and encourages forum shopping, we respectfully
dissent.

Restatement
section 187(2)(b) mandates application of the law chosen by the parties unless:

 

application
of the law of the chosen state would be contrary to a fundamental policy of a
state which has a materially greater interest than the chosen state in the determination
of the particular issue and which, under the rule of '
188, would be the state of the applicable law in the absence of an effective
choice of law by the parties.








See '
187(2)(b). We respectfully disagree with the majority opinion=s
resolution of every element in section 187(2)(b).  We address each in turn.

I.  Would application of Texas law be contrary to
Louisiana policy?

The
majority opinion holds application of the Texas oilfield anti-indemnity statute
cannot be contrary to the fundamental policy served by the Louisiana oilfield
anti-indemnity statute because the anti-indemnity policies of Texas and
Louisiana are the same.  According to the
majority opinion, the difference between the laws of the two States is one of Aapproach,@
not Apolicy.@  By this synthetic reasoning, the majority
opinion reframes the Restatement inquiry into one for which it has an
appropriate answer.

The
Restatement instructs us that two states= laws do not conflict merely because they lead to different
results in particular cases.  See Restatement '
187 cmt. g. 
The Restatement does not provide, however, that different results are
necessarily incompatible with conflict. 
In the context of non-competition agreements, the Texas Supreme Court
determined a conflict would exist because: 


An
employee of one out‑of‑state employer might take a competing job
and escape enforcement of a covenant not to compete because of the law of
another state, while a neighbor suffered enforcement of an identical covenant
because of the law of a third state.  The
resulting disruption of orderly employer‑employee relations, as well as
competition in the marketplace, would be unacceptable.  Employers would be encouraged to attempt to
invoke the most favorable state law available to govern their relationship with
their employees in Texas or other states.

 








DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 680 (Tex. 1990). 
By analogy, if the application of Texas law would encourage companies to
circumvent Louisiana=s anti-indemnity act by either incorporating or executing
contracts outside of Louisiana, then a policy-level conflict is presented.[2]  See Tucker v. R.A. Hanson Co., 956
F.2d 215, 219 (10th Cir. 1992) (finding policy conflict because
companies working in New Mexico could sign contracts in other states and avoid
New Mexico=s anti-indemnity statute entirely).  

Louisiana=s
anti-indemnity statute is designed, in part, to protect workers in
Louisiana.  See L.A. Rev. Stat. Ann. '
9:2780(A); Fontenot v. Chevron U.S.A., Inc., 676 S.2d 557, 563 (La.
1996) (AIt
is also clear . . . that the [Louisiana] Anti-Indemnity Act was designed not
only to protect oilfield contractors but also their employees.@).
 See also Tucker, 956 F.2d at 219
(holding New Mexico anti-indemnity statute protects injured workers).  Messrs. Fritz and Alms worked and were
injured in Louisiana.  The application of
Texas law would deny them Louisiana=s worker protections and unquestionably encourage employers to
invoke the more favorable law of Texas.  Compare
Tex. Civ. Prac. & Rem. Code Ann.
''
127.003, 127.005 (Vernon 1997) (allowing indemnity if backed by insurance) with
La. Rev. Stat. Ann. '
9:2780(A) (unqualified denial of indemnity i.e. this type of indemnity is void).  To hold otherwise, by any logic, is to
rewrite Louisiana law and disregard the statutory interpretation of the
Louisiana Supreme Court.

II. 
Does Louisiana have a materially greater interest in the determination
of the law applicable to indemnity?  Should the issue of indemnity be separated from the
Drilling Contract as a whole?

 








The majority opinion strives to strengthen its argument that
Texas has a greater interest in these indemnity disputes by separating the
indemnity obligations from the parties= other (far more substantial)
obligations under the Drilling Contracts.  Although the Texas Supreme Court has declined to determine
whether oilfield indemnities are Aparticular issues@ to be addressed separately under
Restatement sections 187 and 188, we do know that Amost issues involving a contract will
usually be governed by a single law.@  Maxus, 817 S.W.2d at 54 (concerning
oilfield indemnity authored by the same organization that authored the
contracts at issue here).  Only
occasionally will separation and identification 
of the particular issue provide a more helpful basis for choice-of-law
questions.  Id.  AAs a rule,@ the fact that nearly all the
services contemplated by the parties were performable in a particular state Ais conclusive in determining what
state=s law is to apply.@  Id. (citing DeSantis,
793 S.W.2d at 679).  To
parse and mince one issue, seeks annihilation of the dominate purpose and
objective of respecting Louisiana=s right to hold the regulatory reigns over its own industries
and defeats Louisiana=s overriding policy of voiding such indemnification.

We
think oilfield services contracts should not be fractured in the manner
suggested by the majority because to do so divides the law applicable to
indemnity and the underlying insuring agreement.[3]  The insurance contract is subject to the Alaw of the state which the parties
understood was to be the principal location of the insured risk.@ 
See Restatement ' 193; GATX Leasing Corp. v. Nat=l Union Fire Ins. Co., 64 F.3d 1112, 1115 (7th Cir.
1995).  The principal location of the
risks insured in these disputes is the location of the well.  What is to prohibit today=s losing insurer of Nabors or Chesapeake from hustling across the Sabine and
invoking a Louisiana court=s declaration there is no coverage?  Without coverage, even Texas law prohibits
oil field indemnification.  The logical
consequence of mutual disrespect is open conflict.[4]








We would follow Maxus and decline to sever indemnity
from the drilling activities forming the greater part of the parties= contract for drilling services in
Louisiana.  The well services were performed
in Louisiana.  Maxus, 817 S.W.2d
at 54.  The accidents out of which these
indemnity disputes arose occurred in Louisiana. 
The insurance obligations which provide the money to satisfy these
indemnity claims are governed by Louisiana law. 
Id.  And a Louisiana or
other court=s determination of no coverage for an
indemnitor would defeat Texas indemnification.  

Louisiana has a greater interest in regulating hazardous
industries within its borders, a greater interest in the safety and welfare of
its own workers, a greater interest in insurance within its borders, and a
greater interest in relegation of risk intra state.  For multiple reasons, we would hold Louisiana
has a materially greater interest in regulating these indemnity obligations.

III.  Would, under Restatement section 188,
Louisiana law have applied in the absence of a choice by the parties?

 

A.  Is contractual indemnity a Aparticular issue@
under section 188(1)?

 

The Restatement rations the use of the Aparticular issue.@ 
A brief exposition of the structure of the Restatement itself is
necessary to understand the novelty of the majority opinion in holding that
contractual indemnity is a Aparticular issue.@ 
The general rule for choice of law in tort matters is found in
Restatement section 145.  For contract
matters, the general rules are found at sections 187 and 188.  A variety of specific rules for Aparticular torts,@ Aparticular contracts,@ and Aparticular issues@ in contract follow each respective
general rule.  Each Aparticular issue@ in contract is set forth in sections
198B207, and once denominated as such,
refers back to the general rules.  In
other words, the Aparticular issue@ language in the Restatement
contemplates certain, enumerated issues and no others.  Problematically, the Aparticular issue@ of which the majority is so fond, is
not to be found in the Restatement. 








In order to consider only the place of performance of the
indemnities, the majority opinion relies upon Hughes Wood Products, Inc. v.
Wagner, 18 S.W.3d 202, 205 (Tex. 2000). 
Hughes involved a multi-jurisdictional worker=s compensation dispute, a subject
covered by specific rules at sections 181B185 of the Restatement.  The Hughes court reversed the court of
appeals because it resolved the parties= dispute with reference only to the
general provision in Restatement section 145.[5]  18 S.W.3d at 205B06. 
Worker=s compensation, like every authority
cited in Hughes, is explicitly identified as a Aparticular issue@ in the Restatement.  By contrast, the Restatement contains no
special provision for contractual indemnity. 
Although the majority opinion=s ultimate conclusion that
contractual indemnity is a Aparticular issue@ within the meaning of Restatement
section 188 may or may not be erroneous, neither Hughes nor Maxus,
a contractual indemnity dispute, offer support.  Because stare decisis
does not support fracturing this contract, we would decline to do so.

B.  Application of the principles in Restatement
section 6 and the contacts in section 188(2)

 








As required by section 188(1), the majority opinion applies
section 6 and the contacts named in section 188(2) to determine whether
Louisiana=s relationship to the parties and the
transaction is more significant than Texas=s.[6]  Again, the majority=s analysis achieves a result which is
generally at odds with the law of conflicts. 
The principles in sections 6 and 188(2) overlap and should be analyzed
together.  See Restatement ' 188(2).  The five contacts in section 188(2)
represent, in contract actions, four underlying principles.  These principles are:

(A)      promotion of mutually beneficial relationships among States;

(B)      recognition of state interests;

(C)      protection of parties=
expectations through certain and predictable results; and

(D)      ease in the determination and application of the law to be
applied.

 

See Restatement ' 188 cmt. b.  The principles recognized in section 6 are:

(A)      the needs of the interstate and international systems;

(B)      the relevant policies of the forum;

(C)      the relevant policies of other interested states and the
relative interests of those states in the determination of the particular
issue;

(D)      the protection of justified expectations;

(E)       the basic policies underlying the particular field of law;

(F)       certainty, predictability, and uniformity of result; and

(G)      ease in the determination and application of the law to be
applied.

 

Id. ' 6. 
The majority opinion=s application of these principles can be summarized as
follows:

(1)       anti‑indemnity statutes are meant to protect companies
domiciled in the States where the statute is passed; 

(2)       because neither party is domiciled in Louisiana, neither party
could have a justifiable expectation in the application of the Louisiana anti‑indemnity
statute;   

(3)       because at least one party is domiciled in Texas, the Texas
indemnity statute should be applied; and








(4)       finality, certainty, and uniformity are
best met by applying the law of a state chosen by the parties if at least one
of them is domiciled there.

C.  Our Application of Section 188(2) and Section
6

We apply
the principles in section 6 and the contacts in section 188(2) differently than
the majority.  First, reliance on the place
of performance of the indemnity is improper because it undermines a chief
aim of Restatement section 187, which is to recognize and balance competing
laws.  Section 187 identifies
circumstances where the parties= choice of law should be overridden by state regulation.[7]  By separating the issue of indemnity from the
drilling-services contract as a whole, the majority opinion is able to exalt
the place of performance of the indemnity as the chief determinant of choice of
law under section 188.  Of course, the
place of performance of indemnity is left to the whim of the litigants.  Because the law of a non-forum state cannot
be applied under section 187 unless it would have been applied under section
188, section 187 never alters the litigants= choice of law for oil-field
indemnities under the majority=s reasoning.  Section
187 is rendered unacceptably impotent by this rationale.  If indemnity was the only Aperformance@ considered, then we might agree with
the majority that the only Aplace of performance@ to be considered under section
188(2) is in Texas.  But we do not agree
that removing all Aperformances@ with links to Louisiana prior to conducting analysis under
section 188(2) is a sound approach to conflicts of laws.  See Maxus, 817 S.W.2d at 54 (declining
to determine whether focus on place of performance of indemnity improper under
similar facts). 








Second,
as we discuss above, we observe and articulate the different policies
underlying the Texas and Louisiana anti‑indemnity statutes.  The
majority=s
conclusions about Louisiana policy ignore the Louisiana Supreme Court=s
explicit assertion that the Louisiana statute is intended to protect injured
workers as well as their employers.  In
any event, we believe
the majority=s emphasis on the domicile of the
parties is unjustifiably discriminatory and reject the notion that state and
federal courts generally apply the law of the parties= domiciles when considering
conflicting indemnity laws.

Third,
we do not agree that because the parties= contract specified Texas law,
neither should have reasonably expected the protection of Louisiana=s indemnity statute.  See id.  We think all persons physically present in the
state of Louisiana can reasonably expect application of Louisiana law,
especially law meant to override private bargains based upon firmly held public
policy.  See Maxus, 817 S.W.2d at
53B54 (holding it can be assumed that
parties expect application of the law of state where major portion of contract
performance occurs).  See also DeSantis, 793 S.W.2d at 679 (holding Texas had
materially greater interest than Florida in dispute over non-competition
agreement because employee was a resident of and worked in Texas).[8]

Fourth,
we cannot agree that determination and application of law is eased in
these cases by applying to the indemnity issue the law of the state where the
injured party brought suit.  The
majority must concede that choice of law under its reasoning is based in large
part upon the domicile of the parties. 
Domicile and venue are patently ephemeral.  And what of the fact that some companies may
have multiple domiciles?  Under the
majority approach, there will be new litigation to determine the domicile of
the parties.  








Fifth,
we believe the needs of the interstate system are strongly implicated in
these indemnity disputes.  Compare
Maxus, 817 S.W.2d at 54 (AThe state where the services are to be rendered will also
have a natural interest in them.@) with Restatement ' 188 cmt. c. (state of party=s domicile has interest in
application of its own rule).  As the
majority notes, our nation=s courts have been kept busy in recent years determining the
validity of oilfield indemnities.  It is
evident there is a need for a uniform analysis that will aid companies in
reliably choosing among states= conflicting laws.[9]

Sixth,
we believe the majority=s reasoning is more likely to diminish, rather than create, certainty,
predictability and uniformity.  If
the majority is correct that the true place of performance is where the injured
party files suit, there will be no certainty until that suit is filed.[10] 
Here, under the majority opinion, a simple assignment of either party=s contract rights could have altered
the choice of law of indemnity.  In fact,
there was an assignment by one Texas company to another in these cases.  Had the assignments been to a company in a
third state, would the law of that state apply? 
Under the analysis by the majority opinion, assignment or merger of
interests could give us yet another result, from the same Louisiana accident.  Given the rapidly changing corporate climate
in the oil business, under the majority=s reasoning, any major corporate
acquisition involving companies domiciled in different states might alter the
choice of law for indemnity arising out of hundreds of accidents.[11] 
This result is entirely unpredictable. 
See Maxus, 817 S.W.2d at 54 (holding that application of law of state
where physical performance takes place will be readily ascertainable and
thereby create certainty.)








Seventh,
it is reasonably clear that the majority opinion offers plaintiffs (and
defendants) carte blanche to forum shop.  Attorneys may add parties, move their
clients, or await corporate mergers to get the indemnification statute they
prefer.  Finally, as we discuss below, we
are comfortable the supreme court has already answered the section 6 inquiry.[12]   For
all these reasons, we would hold Louisiana has a more significant relationship
to the parties and the transaction than Texas.

D.  Maxus B Has the supreme court already
decided this issue? 

We
believe the supreme court has already held that geography, not domicile, should
be emphasized in determining the jurisdictional boundary of the Texas
anti-indemnity statute.  In Maxus,
the court refused to apply Texas law to an oil-field indemnity dispute even
though indemnity was sought in Texas. 
817 S.W.2d at 54.  The court
specifically stated that the outcome was dictated by the location of the oil
well, writing:

One can argue that the Texas Legislature=s purpose in enacting [the anti-indemnity statute] is
to protect Texas contractors who work on mineral wells and mines wherever they
may be situated, but we think it more plausible that it had the more limited
objective of protecting contractors who drill wells in Texas.  We do not read the statute to have an
extraterritorial reach, absent some agreement between the parties.

 

Id.  Based on the
foregoing, we cannot agree with the majority=s reading of Maxus that a
different rule applies merely because the contractor seeking to enforce the
indemnity is a Texas domiciliary.[13]  








The majority also would distinguish Maxus
from the cases at bar based on the final clause in the excerpt above
relating to agreement of the parties. 
Here, unlike in Maxus, the parties chose which state=s law to apply.  However, Restatement section 187(2)(b) requires
an examination of the policies underlying the anti-indemnity statutes, assuming
no choice of law had been made.  See Restatement ' 187(2)(b).  Thus, the policy identified in Maxus
supporting anti-indemnity is relevant; whether the parties actually chose the
law of a particular state is not.  The
error in the majority=s consideration of the parties= choice is easily seen upon
recollection of the premise of conflicts analysis:  If the fact that parties chose law was
relevant in determining whether their choice should be overruled by public
policy, our review would be perfunctory at best.  

Conclusion

In Maxus, the Texas Supreme
Court joined several other courts in recognizing the location of the
performance of the majority of services under a contract determines the Aplace of performance@ for conflicts purposes.  See, e.g., Palmer G. Lewis Co. v. Arco
Chem. Co., 904 P.2d 1221, 1227 (Alaska 1995); Tucker v. R.A. Hanson Co.,
956 F.2d 215, 218B19 (10th Cir. 1992); Donaldson v. Fluor
Eng=rs, Inc., 523 N.E.2d 1113, 1116 (Ill. App.
Ct. 1998).  The stability provided by the
geography-based analysis identified in Maxus enables all parties,
whether based in Texas or elsewhere, to easily identify and allocate risks
associated with oilfield indemnity obligations.

This entire court believes
anti-indemnity statutes cannot be avoided by private bargain.  Only the reach of the anti-indemnity statutes
is disputed.  The question is one of
national importance.  The geographically
restrictive reasoning stated in Maxus best serves the citizens of Texas
by reliably respecting the rights of the citizens of Louisiana and of our
United States.  By contrast, policy
determination and conflicts resolution based on domicile or venue are inherently
unstable and openly discriminate against our neighbors.[14] 
We respectfully dissent.

 

 

/s/        Don
Wittig

Senior Justice

 








Judgment rendered and Majority and Dissenting Opinions
filed November 21, 2002.  (Justices
Anderson, Fowler, Seymore, Guzman, and Senior Justice
McCloud join the Majority opinion. 
Senior Justice Wittig filed a dissenting
opinion in which Justices Yates, Hudson, and Frost joined.  Justice Frost filed a dissenting opinion in
which Justice Hudson and Senior Justice Wittig
joined.[15]  Justice Edelman filed a dissenting opinion.).

 

En Banc.

 

Publish C Tex. R. App. P. 47.3(b).








Motion for En Banc Rehearing in Cause No.
14-00-00173-CV Granted, Opinion of August 23, 2001 Withdrawn and Consolidated
for En Banc Review with Cause No.  
14-00-00580-CV; Judgment in Cause No. 14-00-00173-CV Affirmed, Judgment
in Cause No. 14-00-00580-CV Reversed and Remanded, and Majority and Dissenting
Opinions filed November 21, 2002.

In The

Fourteenth Court of Appeals

 

NO. 14-00-00173-CV

 

CHESAPEAKE OPERATING, INC., Appellant

 

 

V.

 

 

NABORS DRILLING USA, INC., Appellee

 



 

On Appeal from the 239th District
Court

Brazoria County, Texas

Trial Court Cause No. 4251JG98-1

 



 

NO. 14-00-00580-CV

NABORS INDUSTRIES, INC., NABORS DRILLING USA, INC.,
NABORS LOFFLAND DRILLING CO., AND NABORS ENERGY SERVICES, INC., Appellants

 

 

V.

 

 

CHESAPEAKE OPERATING, INC. AND CHESAPEAKE ENERGY
CORP., Appellees

 



 

On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 98-05525

 



 








E N  
B A N C   D I S S E N T I N G   O P I
N I O N

The question before the court is a
sensitive one because it compels us to choose between the law our own
legislature enacted for operations in Texas oilfields and the law of a
neighboring state whose legislature chose a different path for oilfield
operations within its territorial boundaries.  The question is a significant one not only
because it tests the measure of our deference to another state=s right to make the rules within its
borders, but also because it impacts some of the most valued qualities in our
own civil justice system C freedom of contract, fulfillment of justified contract
expectations, and predictability in the enforcement of contractual provisions.

Although, ideally, conflict-of-laws
rules should be simple and easy to apply[1],
application of the Restatement test to the choice-of-law provision in these
consolidated cases requires a multi-tiered analysis and the balancing of many
factors.  The members of this court have
labored earnestly to resolve this challenging and multifaceted issue, giving
careful scrutiny to the arguments of the parties and the logic of the learned
trial judges who trod this same ground in reaching two different
conclusions.  The close vote and spirited
discussion are testament not only to the complexity of the task but also to the
strength of the arguments on both sides of this important issue. 

The result the court reaches is not
unfair or unreasonable, but the path the majority takes to get there strays too
far from the course the Texas Supreme Court has charted for resolution of
conflict-of-laws issues.  Some of the
majority=s policy arguments are quite
compelling, but its legal analysis is flawed and out of step with most other
jurisdictions that have considered the issue. 
More importantly, the road the court takes today compromises the
principles our high court has adopted for deciding conflict-of-laws
issues.  The road not taken is the one
that would further them.  








For Louisiana law to apply to the
indemnity provisions in this consolidated appeal, all three of the following
must be true:  (1) Louisiana law would
apply to the facts of this case under section 188 of the Restatement (Second) of Conflict of Laws,
ignoring the provision of the drilling contract choosing Texas law; (2) the
application of Texas law would be contrary to a fundamental policy of
Louisiana; and (3) Louisiana has a materially greater interest than Texas in
determining whether these indemnity provisions are enforceable.  See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 678 (Tex. 1990); Restatement (Second) of Conflict of Laws ' 187(2)(b) (1971).  As explained in Justice Wittig=s dissent and amplified below, each
of these statements is true; therefore, Louisiana law should apply.  The court errs in holding that Texas law
applies.

Louisiana law would apply under
section 188.








The majority erroneously concludes
that Texas law would apply under section 188 of the Restatement (Second) of Conflict of Laws in the absence of
the choice-of-law provision.  In
performing the analysis under section 188, the court must determine Athe place of performance.@ 
See Restatement (Second)
of Conflict of Laws ' 188(2) (1971).  The
majority concludes that the place of performance is Texas because that is where
Danny Alms and Dennis Fritz filed suit. 
The majority opinion cites no authority for this proposition.  Although this appears to be an issue of first
impression under Texas law, the majority rule from jurisdictions that have
addressed the issue is that the state in which the indemnitee
is sued is not the place of performance under section 188(2)(c).  See McCall v. Columbia Gas Dev. Corp.,
635 F. Supp. 49, 52 (W.D. La. 1986) (holding that place of performance under ' 188 for an indemnity provision is
where services contract was performed); Hebert v. Kerr-McGee Corp., 618
F. Supp. 767, 772B73 (W.D. La. 1985) (holding that Texas law applied and that
Texas was place of performance because work order was wholly performed on Outer
Continental Shelf off coast of Texas C a jurisdiction governed by Texas law
C even though plaintiff sued indemnitee in Louisiana); Palmer G. Lewis Co., Inc. v.
ARCO Chem. Co., 904 P.2d 1221, 1223B27 (Alaska 1995); (holding
that place of performance under ' 188(2)(c) is  state in which contract containing the
indemnity provision was performed rather than state where indemnitee
is sued); Dillard v. Shaughnessy, Fickel and Scott Architects, Inc., 943 S.W.2d
711, 714B17 (Mo. Ct. App. 1997) (same); see
also Reding v. Texaco, Inc., 598 F.2d 513, 515B18 (9th Cir. 1979) (holding that
contract was performed in Wyoming and that Wyoming anti-indemnity statute
applied where well was drilled in Wyoming, even though (1) parties were from
Texas and New York; (2) parties executed drilling contract in Colorado and
Texas ;and (3) indemnitee was sued in California); but
see Grossman v. Aristech Chem. Corp., 882 F. Supp. 110, 113 (W.D. Mich.
1994) (stating that place of performance of indemnity is the state in which the
indemnitee was sued); Chrysler Corp. v. Skyline
Indus. Servs., Inc., 528 N.W.2d 698, 704B05 (Mich. 1995) (indicating that
place of performance of an indemnity may have been the state in which the indemnitee was sued). 
Though the majority does not see why Louisiana Ashould set the rules for [this]
fight,@ other courts addressing this issue
have found that the state where the services were performed had the most
significant relationship to the transaction and the parties, as to the
enforceability of an indemnity provision covering litigation in a different
state.  See Hebert, 618 F.
Supp. at 772B73; Dillard, 943 S.W.2d at 714B17; see also Reding, 598 F.2d at 515B18.

Furthermore, the United States Court
of Appeals for the Fifth Circuit has applied Texas conflict-of-laws rules in a
way that is contrary to the majority=s analysis.  In Gorsalitz
v. Olin Mathieson Chem. Corp., the contract
containing the indemnity was executed in Texas; however, the services under the
contract were performed in Louisiana. 
429 F.2d 1033, 1048 (5th Cir. 1970). 
The Fifth Circuit held that Louisiana law applied to the indemnity
provision because Louisiana was the place of performance, even though the
personal-injury plaintiff sued the indemnitee in
Texas.  See Gorsalitz,
429 F.2d at 1035B36, 1048.  The Gorsalitz court ruled that, when conducting a
conflict-of-laws analysis as to an indemnity provision, the place of
performance is where the service contract containing the indemnity was
performed, not where the indemnitee was sued.  See Gorsalitz,
429 F.2d at 1035B36, 1048.  The Gorsalitz case was decided before Texas adopted the Restatement (Second) of Conflict of Laws.  Nonetheless, in Maxus Exploration
Co. v. Moran Bros., Inc., the Texas Supreme Court cited Gorsalitz as good law.  817 S.W.2d 50, 53 (Tex. 1991).








Notwithstanding the Texas Supreme
Court=s reliance on Gorsalitz
in Maxus, the majority finds the Roberts case more
persuasive.  Compare Roberts v. Energy
Dev. Corp., 235 F.3d 935, 938B43 (5th Cir. 2000), with Gorsalitz, 429 F.2d at 1035B36, 1048.  The Roberts case seems to indicate
that the place of performance was where the services under the contract were
performed, rather than where the indemnitee was sued.  See
Roberts, 235 F.3d at 941B43.  After stating that
it must consider several factors, including the place of performance, the Roberts
court stressed several times that the accident occurred in Louisiana and that
the work order at issue pertained to work to be performed exclusively in
Louisiana.  See id.  The Roberts court never mentioned the
fact that the personal-injury plaintiff happened to have filed suit in
Louisiana.  See id.  Therefore, Roberts does not support the
majority opinion on this issue.[2]  See id.  More importantly, inasmuch as our high court
relied on Gorsalitz in Maxus, it is Gorsalitz=s holding C that the place of performance for
an indemnity is not the place where the indemnitee is
sued C that should merit this court=s attention.  The majority, however, goes in the opposite
direction.








Today the court creates a rule of law
new to Texas C that the place of performance for
indemnity issues is the place where the indemnitee is
sued.  The court=s new rule is contrary to the Texas
Supreme Court=s emphasis on the place of
performance in deciding conflict-of-laws issues.  See Maxus Exploration Co., 817 S.W.2d
at 53B57. 
Though the Maxus court chose not to expressly decide whether the
place of performance as to an indemnity issue is the place where the indemnitee is sued, it analyzed the indemnity provision of
a drilling contract under section 196 of the Restatement
(Second) of Conflict of Laws, which governs contracts for personal
services.  See Maxus Exploration Co.,
817 S.W.2d at 53B57; Restatement
(Second) of Conflict of Laws ' 196 (1971); see also Hughes
Wood Products, Inc. v. Wagner, 18 S.W.3d 202, 206 n.2 (Tex. 2000)
(describing Maxus as an opinion Ainvoking section 196 to determine the
law governing contracts for personal services@). 
The Maxus court stated that A[i]n the
case of a contract for the rendition of services, section 196 accords the place
of performance paramount importance.@ 
Maxus Exploration Co., 817 S.W.2d at 53 (emphasis added).  The majority states that the place of
performance is the place where attorneys performed legal services defending Nabors, the indemnitee.  Therefore, under today=s new rule, the place where the indemnitee is sued becomes of Aparamount importance@ in the conflict-of-laws
analysis.  See id.  Consequently, that which is unknown at the time
of contracting C where a future lawsuit might one day be filed C is accorded superior weight and influence in the
majority=s analysis. Under this approach, the
law applicable to oilfield indemnities, as well as the extent to which these
indemnities are enforceable, will vary depending on the jurisdiction in which
the indemnitee is sued.  The place of performance for an indemnity
will always be a mystery until suit is filed and then that place C wherever it may be C will become of Aparamount importance@ in determining which state=s law applies.  Given that happenstance will govern the
outcome, it is difficult to characterize this means of determining place of
performance as anything but Apurely fortuitous.@ 
See ante, slip op. at p.11, n.16 (majority opinion).  Moreover, this methodology contradicts
the  Restatement
(Second) of Conflict of Laws, which indicates that the place of performance
points to no particular state if, at the time of contracting, the place of
performance is unknown or uncertain.[3]  See Restatement
(Second) of Conflict of Laws ' 188 cmt.
(e), at 580; accord Hebert, 618 F. Supp. at 772. 








The majority opinion also seems to
imply that the fourth factor C the location of the subject matter of the contract C does not apply in this case because
this factor is important only for contracts dealing with a specific physical
thing, such as land or a chattel, or with protection against a localized
risk.  See Restatement (Second) of Conflict of Laws ' 188 cmt.
(e), at 580B81; ante, slip op. at p.9,
n.13.  The majority also states that,
even if the location of the contract=s subject matter is an important factor,
this factor points to Texas under the same analysis the majority uses for the
place-of-performance factor C because the personal-injury plaintiff sued the indemnitee in Texas. 
See ante, slip op. at p.9, n.13. 
Although section 188 states that factors are to be evaluated according
to their relative importance with respect to the particular issue, the fourth
factor is still the location of the contract=s subject matter C not the location of the subject
matter of the particular issue.  The only
contract involved in this case is the drilling contract under which the Burns
7-1 (Re) well was drilled in Louisiana.[4]  This contract deals with a specific physical
thing, such as land or a chattel C the Burns 7-1 (Re) well in
Louisiana.  Therefore, the location of
this well C in Louisiana C must be significant for the court=s conflict-of-laws analysis.  See Restatement
(Second) of Conflict of Laws ' 188 cmt.
(e), at 580B81. 
The majority misses the mark in concluding that the location of the
subject matter of this drilling contract is Texas.  The subject matter of the drilling contract
did not change because an indemnitee was sued in
Texas.  

If the place of performance and
location of the contract=s subject matter were determined based on where the indemnitee is sued, as the majority concludes, then these
factors would point to no particular state because, at the time of contracting,
the parties had no way of knowing where any future suit might be brought
against any indemnitee under the contract.  See Restatement
(Second) of Conflict of Laws ' 188 cmt.
(e), at 580; accord Hebert, 618 F. Supp. at 772.  Nevertheless, the majority concludes that
Texas is both the place of performance and the location of the contract=s subject matter.  This conclusion is contrary to the
Restatement analysis the Texas Supreme Court has adopted.








Additionally,  the majority=s methodology for determining which
state=s law applies contravenes the need
for certainty, predictability, and uniformity of result.  See Restatement
(Second) of Conflict of Laws ' 6(2)(f) (1971).  To change the conflict-of-laws analysis, and
quite possibly the law applicable to the contract, based on where the plaintiff
happens to file suit against the indemnitee is random
and arbitrary.  Moreover, it adds uncertainty,
unpredictability, and variety of result to an area of the law already burdened
with these unwelcome qualities.  See
Dillard, 943 S.W.2d at 717. 
As Justice Edelman points out in his dissenting opinion, there is a
compelling need for certainty, predictability, and uniformity of result in the
conflict-of-laws area.  Though parties
may find the laws of states in which they conduct oilfield operations
problematic or undesirable, without the majority=s new rule, at least they would  have the security of knowing the law by which
they will be bound if and when suit is filed. 
With that knowledge, there is some measure of predictability; without
it, there is none. 

Although certainty, predictability,
and uniformity of result do not determine the place of performance, the lack of
these qualities undermines the principles the Restatement test is designed to
further.  See Restatement (Second) of Conflict of Laws
' 6. 
Recognizing that predictability is a valid consideration in the
analysis, the majority asserts that its new rule fosters predictability by
enforcing the law chosen by the parties. 
Unquestionably, as to parties with choice-of-law provisions in their
contracts, the rule that would provide the most uniformity, certainty, and
predictability would be a rule that always enforced the parties= choice of law; however, for policy
reasons, the Restatement and the Texas Supreme Court have not chosen this
rule.  See DeSantis,
793 S.W.2d at 677B78; Restatement
(Second) of Conflict of Laws ' 187. 
Under the Restatement rule adopted by the Texas Supreme Court, we are to
analyze the three factors contained in section 187(2)(b) of the Restatement,
one of which is the determination of the law that would apply under section 188
if there were no choice of law by the parties. 
Instead of doing this, the majority is concerned with giving Ajudicial respect@ to the parties= choice of law and thwarting any
attempt to Aundo the result@ of this bargain.  Though it is quite tempting to rely on the
parties= contractual choice of law in
analyzing this thorny issue, it is not appropriate to do so as part of a
section 188 analysis.  See DeSantis, 793 S.W.2d at 677B78; Restatement
(Second) of Conflict of Laws ' 187. 
By giving Ajudicial respect@ to the parties= choice-of-law provision, the
majority considers the very thing the Texas Supreme Court has said we should
ignore.  See DeSantis,
793 S.W.2d at 677B78; Restatement
(Second) of Conflict of Laws ' 187.    








Even if it were proper to consider
the parties= choice of Texas law and their
expectation that Texas law would apply based on the insurance and indemnity
provisions of the drilling contract, the result the majority reaches would not
necessarily follow.  Significantly, the
Restatement refers to Aprotection of justified expectations.@ 
Restatement (Second) of Conflict
of Laws ' 6(2)(d) (emphasis added). 
As a general rule, contracting parties should expect that the provisions
of their contracts will be binding on them and that courts will enforce the
bargains they have struck.  However, that
is not always the case.  For example,
parties who enter into contracts that contain provisions which are illegal or
against public policy have no legitimate expectations that their contracts will
be enforced because courts declare such contracts void.  See e.g., In re Kasschau,
11 S.W.3d 305, 312B14 (Tex. App.CHouston [14th Dist.] 1999, orig. proceeding) (concluding the
trial court was justified in finding settlement agreement void where agreement
included provision illegally requiring parties to destroy evidence in a
potential criminal proceeding). 
Consequently, in those cases, the parties= contract hardly reflects justified
expectations for it is not logical or reasonable that a party should expect a
court to enforce a contract that the law declares void.  In such cases, it is more accurate to say
that the contract reflects the parties= agreement, hope, and desire but not
necessarily their justified expectations. 









Here, the parties apparently were
aware of the enforceability issue regarding the oilfield indemnities.  They apparently recognized that they were
drilling for oil in a state whose law voids provisions in drilling contracts
that indemnify parties against their own negligence.  Wanting to exploit Louisiana oil but not be
bound by the laws of the Louisiana oilfield, these sophisticated parties
contracted for Texas law to apply instead.[5]  Whether this would prove an effective or
successful strategy remained to be seen. 
Under these circumstances, the parties= oilfield indemnity provision may be
a strong indication of their agreement, hope, and desire, but it does not
necessarily reflect their justified expectations.  Nor does the parties= oilfield indemnity provision compel
the majority=s conclusion that we cannot disregard
the indemnity language the parties chose and the insurance they agreed to
purchase in order to make their indemnities enforceable.  Ante, slip op. at p.16.  Applying that logic, one might just as easily
argue that we should also enforce illegal contracts (which the law also views
as void) lest we disappoint the expectations of the parties who crafted
them.  

In cases such as this, the parties= attempt to avoid the oilfield laws
of the state where the oilfield operations are conducted does not necessarily
translate into a justified expectation. 
Chesapeake and Nabors might well have expected
that, notwithstanding their efforts to bring another state=s oilfield statutes to the Louisiana
oilfield, the court hearing this dispute would refuse to enforce the oilfield
indemnity in light of Louisiana=s Oilfield Anti-Indemnity Statute and the strong public
policy that underlies it.  As Justice Wittig points out in his dissent, the parties to a drilling
contract for a well in Louisiana can reasonably anticipate that Louisiana law
might apply to issues arising under their contract.  Certainly, it would not be unreasonable for
them to expect that Louisiana law might apply despite their having Adrafted indemnity clauses and
purchased insurance to meet . . . Texas law.@  Ante, slip op. at p. 16.  








Whatever the parties= true expectations were with respect
to the oilfield indemnities in this case, those expectations must yield when
the Avalue of protecting the expectations
of the parties is substantially outweighed in the particular case by the
interest of the state with the invalidating rule in having this rule applied.@ 
See Restatement (Second)
of Conflict  of Laws ' 188 cmt.
(b), at 577.  Though it is especially
difficult to disregard a bargain contracting parties have struck, it is even
more difficult to honor it when doing so would trample on a sister state=s sovereign right to establish and
enforce public policy within its own borders. 
As discussed more fully in the sections that follow, Louisiana, like
Texas, has a strong and compelling interest in regulating activity in its
oilfields.  That interest outweighs the
value of protecting expectations of parties in the enforcement of a contractual
provision Louisiana=s law declares void. 
In this context, even if it were proper to consider the parties= choice of Texas law in this part of
the analysis, and even if the insurance, indemnity, and choice-of-law provision
could be fairly characterized as a justified expectation of the parties that
Texas law would govern, the balance still tips in favor of applying Louisiana
law. 

Regarding the seventh principle in
section 6 of the Restatement, the majority claims the Maxus court held
that the Aease of determination and application
of the law@ points to applying the law of the
state where the injured party brought suit. 
See ante, slip op. at p.18B19; Restatement
(Second) of Conflict of Laws ' 6(2)(g).  The Maxus court did not so hold;
rather, it stated that AKansas law is easily determined and applied.@ 
Maxus Exploration Co., 817 S.W.2d at 57.  The majority states that this seventh
principle cannot be known with certainty until the injured party files
suit.  The majority implies that this
principle supports its analysis based on factors that cannot be determined
until the injured party sues the indemnitee, e.g.,
the majority=s interpretation of place of
performance and location of the contract=s subject matter.  This principle does not support the majority=s position.  

The Restatement says only the
following about the seventh principle: 
(1) it expresses the goal that conflict-of-laws rules (not the
substantive law chosen under these rules) should be simple and easy to apply;
and (2) this principle should not be overemphasized, because it is obviously of
greater importance that the conflict-of-laws rules lead to desirable
results.  Restatement (Second) of Conflict of Laws ' 6(2)(g) & cmt.
(j).  Because this principle expresses
only the need for simple and easy-to-apply conflict-of-laws rules, it can be
applied at the time of contracting and does not support the majority=s analysis.  See NL Indus., Inc. v. Commercial Union
Ins. Co., 65 F.3d 314, 328B29 (3d Cir. 1995) (seventh principle deals with simplicity of
conflict-of-laws rules); In re Air Crash Disaster Near Chicago, Illinois on
May 25, 1979, 644 F.2d 594, 616 (7th Cir. 1981) (same).  Although this court has not addressed the
issue in a published case, this interpretation of the seventh principle is the
only one that comports with the plain language of the comment to section 6 of
the Restatement.  See Restatement (Second) of Conflict of Laws
' 6, cmt.
(j). 








The Texas Supreme Court did not
explain why it concluded that Kansas law could be  easily determined and applied in the Maxus
case.  It may have been referring to the
simplicity of its conflict-of-laws analysis or to the simplicity of determining
applicable Kansas law.  See Maxus
Exploration Co., 817 S.W.2d at 57. 
If, as the majority concludes, the Maxus court viewed this
seventh principle as referring to the ease in determining the substantive law
of Kansas, it still would not affect the analysis in this case because Texas
courts would have no difficulty applying the law of a bordering state like
Louisiana.  Indeed, Texas courts have had
no trouble determining and applying the substantive law of foreign countries
such as Turkey, Turkmenistan, and Taliban-era Afghanistan.  See, e.g., Falcoal,
Inc. v. Turkiye Komur Isletmeleri Kurumu, 660 F.Supp. 1536, 1541B42 (S.D. Tex. 1987) (applying Turkish
law); Bridas Corp. v. Unocal Corp., 16
S.W.3d 893, 900B06 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (applying laws of Turkmenistan
and Afghanistan and stating that the laws of these countries can be readily and
reliably ascertained).  Surely, then, if
the majority is correct in concluding that this seventh principle of section 6
means the ease of determining the substantive law, it would be entitled to
almost no weight.  And what little weight
the court could legitimately accord it would hardly tip the balance in favor of
applying Texas law.  Therefore, the
seventh principle of section 6 does not support the majority=s analysis.








Today=s decision also creates other
problems and incongruities in the conflict-of-laws analysis.  As explained above, if the place of
performance and location of the contract=s subject matter is where the indemnitee is sued, as the majority holds, then these
factors point to no particular state under the conflict-of-laws analysis.[6]  See Restatement
(Second) of Conflict of Laws ' 188 cmt.
(e), at 580; accord Hebert, 618 F. Supp. at 772.  If the Restatement
(Second) of Conflict of Laws is properly applied to the majority=s analysis, these important factors
will be absent from the section 188 analysis for indemnity issues.  Therefore, the majority=s conflict-of-laws analysis for
indemnities is really based on only three of the section 188(2) factors.  In most cases, including the two involved in
this consolidated appeal, these three factors reduce down to a single factor C the domicile, residence,
nationality, place of incorporation, and place of business of the parties.  See Restatement
(Second) of Conflict of Laws ' 188(2).  This Acitizenship analysis@ does not promote certainty,
predictability, or uniformity of result in this area of the law.  Instead, the majority=s analysis only creates problems, as
shown by Justice Wittig=s dissent.

For example, if a Texas contractor
entered into a drilling contract with an Oklahoma operator and that contract
contained indemnities and no choice-of-law provision, the citizenship analysis
under section 188 would hold that the Texas Oilfield Anti-Indemnity Statute
applies, even if the contract were for a well in Louisiana (because the
place-of-performance and location-of-the-subject-matter factors do not apply
inasmuch as the parties could not have known where any indemnitee
would be sued).  This result is contrary
to the Texas Supreme Court=s territorial approach to anti-indemnity statutes under
section 188.  See Maxus Exploration
Co., 817 S.W.2d at 57.  Furthermore,
what if the Texas contractor assigns the contract to a Louisiana contractor and
the indemnities are enforceable under the Texas anti-indemnity statute but not
under the Louisiana anti-indemnity statute? 
Under the well-established principle that an assignee receives the full
rights of the assignor, the Louisiana contractor should receive the enforceable
indemnities contained in the drilling contract that its predecessor assigned to
it.  See Jackson v. Thweatt, 883 S.W.2d 171, 174 (Tex. 1994).  The citizenship analysis forces courts either
to violate the well-settled principle that the assignee receives the full
rights of the assignor or allow parties to evade anti-indemnity statutes by
assignment.  The latter would frustrate,
not further, the policies of states with anti-indemnity statutes.  See La.
Rev. Stat. Ann. ' 9:2780 (West 1991); N.M.
Stat. Ann. ' 56-7-2 (Michie 2001); Tex. Civ. Prac. & Rem. Code ' 127.001, et seq.; Wyo. Stat. Ann. ' 30-1-131 (Michie
2001). 








Another inconsistency common to both
the majority=s approach and the citizenship
analysis is that they both would void similar indemnities in subcontractors= contracts based only on the
citizenship of the subcontractor.  The
records in this appeal illustrate as much. They show the following:  (1) to perform the work required under its
drilling contract for the Burns 7-1 (Re) well in Louisiana, Chesapeake entered
into subcontracts with various entities, including Reeled Tubing, Inc. (ARTI@), a Louisiana company and Quality
Pressure Testing (AQPT@), a Texas company; (2) under applicable master service
agreements, Chesapeake=s contract with both RTI and QPT contained identical
indemnity provisions under which these subcontractors would indemnify
Chesapeake against personal-injury claims by their respective employees,
regardless of Chesapeake=s negligence; (3) these indemnities were similar to the
indemnities between Chesapeake and Nabors in the
drilling contract; (4) the indemnities in the subcontracts appear to be
enforceable under Oklahoma and Texas law but unenforceable under Louisiana law;
and (5) the injuries to Alms and Fritz are covered by the respective
indemnities from RTI and QPT in favor of Chesapeake.  Under the citizenship analysis, the same
indemnification provision for work under the same drilling contract on the same
Louisiana well would appear to be void and unenforceable in RTI=s subcontract (under Louisiana law)
but valid and enforceable in QPT=s subcontract (under Texas or
Oklahoma law), based on the citizenship of the subcontractors.  








Another ramification of the majority=s section 188 analysis is that it
effectively withdraws protections for Texas contractors working in states that
have more stringent anti-indemnity statutes than Texas, i.e., Louisiana,
New Mexico, and Wyoming.  Compare La. Rev. Stat. Ann. ' 9:2780; N.M. Stat. Ann. ' 56-7-2; Wyo. Stat. Ann. ' 30-1-131 with Tex. Civ. Prac. & Rem. Code ' 127.001, et seq.; see also
Maxus Exploration Co., 817 S.W.2d at 57. 
Under the Texas Supreme Court=s territorial approach in Maxus,
Texas contractors enjoy the protections provided by these states= anti-indemnity statutes as to
oilfield contracts for wells in these states. 
See Maxus Exploration Co., 817 S.W.2d at 57.  But, under the majority=s citizenship approach, Texas
contractors no longer will enjoy the protections enacted by the legislatures of
these states, unless one of the other parties to the contract is a citizen of
the state where the well is located. 
Although the majority=s approach arguably would increase protection of Texas
contractors in states like Oklahoma, by extending the Texas Oilfield
Anti-Indemnity Statute into that state for work performed by Texas contractors,
it is likely to decrease protection for Texas contractors in other states.  Given the large volume of oilfield work in
Louisiana and offshore Louisiana, as well as the work performed in New Mexico
and Wyoming, the net effect of today=s decision will almost certainly be a
decrease in protection of Texas contractors from the sort of evils the majority
concedes were declared against the public policy of both Texas and Louisiana.[7]    Though the learned justices in the majority
find this point perplexing, there is no denying the rippling effects of the
majority=s citizenship-based analysis.  Nor is there any escape from the
incongruities it produces.  

More importantly, as pointed out in
Justice Wittig=s dissent, focusing on the
citizenship of the parties is contrary to the Texas Supreme Court=s approach in Maxus.  Our high court rejected a Texas party=s plea for the application of the
Texas Oilfield Anti-Indemnity Statute to an indemnity in a drilling contract
negotiated and executed in Texas between two Texas parties.  See Maxus, at 51B57. 
The majority opinion states that the Texas and Louisiana anti-indemnity
statutes apply to all oilfield contracts everywhere, regardless of where the
company or well is located.  Neither
statute expressly addresses its territorial reach.  Nonetheless, the Texas Supreme Court has
expressly addressed this issue as to the Texas statute:

One can argue that the Texas Legislature=s purpose in enacting [the Texas oilfield
anti-indemnity statute] is to protect Texas contractors who work on
mineral wells and mines wherever they may be situated, but we think it more
plausible that it had the more limited objective of protecting contractors who
drill wells in Texas.  We do not read the
statute to have an extraterritorial 
reach, absent some agreement between the parties.   

See Maxus Exploration Co., 817 S.W.2d at 57 (emphasis in
original).  For purposes of the section
188 analysis in this case, we must ignore the choice-of-law provision, and
therefore, we also must ignore the Texas Supreme Court=s reference to the possibility of an
enforceable choice-of-law provision.  See Restatement
(Second) of Conflict of Laws  ' 187(2)(b); see also DeSantis, 793 S.W.2d at 678. 








The citizenship analysis and all the
mischief it invites can be avoided by adhering to the territoriality approach C the Texas Supreme Court=s approach in Maxus.  See Maxus Exploration Co., 817 S.W.2d
at 57.  Consistent with section 188 and
the comments thereto, this approach assigns primary importance to the place of
performance of the drilling contract (Louisiana) and the location of the
contract=s subject matter (Louisiana).  It also presumes that oilfield anti-indemnity
statutes were intended to cover all wells in that state (Louisiana) and not to
cover wells outside of the state, absent a choice-of-law provision enforceable
under section 187.  See id.  Though the majority initially
acknowledges that this approach would be easier to apply, our esteemed
colleagues ultimately conclude that this approach is not as simple as it might
appear and that there are potential problems with determining the place of
performance of master service contracts. 
These concerns notwithstanding, courts have had no difficulty applying
Texas conflict-of-laws principles and determining the place of performance in
situations involving master services contracts. 
See, e.g., Hebert, 618 F. Supp. at 772B73. 
In any event, any difficulty courts might encounter in grappling with
these matters seems a small price to pay for some measure of certainty and
predictability in the enforceability of oilfield indemnities.  The majority=s section 188 analysis is a
significant step away from the Texas Supreme Court=s approach in Maxus and a
clear departure from the certainty, predictability, and uniformity of result
that approach tends to foster.

Application of Texas law would be
contrary to a fundamental policy of Louisiana.








The majority strains to conclude
that, even if Louisiana law would be applied under section 188, the choice of
Texas law still prevails because Texas law does not contravene any policy of
Louisiana.  This conclusion is based on
the dubious notion that the policies of the Louisiana and Texas anti-indemnity
statutes are the same.  The majority
presumes that Louisiana=s policy regarding its oilfield anti-indemnity statute is
fundamental, as required by section 187(2)(b); however, the majority
implausibly concludes that the policies of Texas and Louisiana in the area of
oilfield indemnities are equivalent.  The
majority bases this conclusion on the similarity between section 127.002(a) of
the Texas Civil Practice and Remedies Code and the first sentence of section
9:2780(A) of the Louisiana Revised Statutes. 
See Tex. Civ. Prac. & Rem. Code ' 127.002(a); La. Rev. Stat. Ann. ' 9:2780(A).  The majority, however, does not address the
second sentence of section 9:2780(A), which also states the relevant Louisiana
policy:

It is the intent of the legislature by this Section to
declare null and void and against public policy of the state of Louisiana any
provision in any agreement which requires defense and/or indemnification, for
death or bodily injury to persons, where there is negligence or fault (strict
liability) on the part of the indemnitee, or an agent
or employee of the indemnitee, or an independent
contractor who is directly responsible to the indemnitee.


 

La. Rev.
Stat. Ann. ' 9:2780(A).  Under this second sentence, the Louisiana
legislature articulates Louisiana=s fundamental policy against
enforcing indemnities for personal injury where there is negligence, fault, or
strict liability on the part of the indemnitee.  See id.  

Under the unambiguous language of the
Louisiana statute, the indemnity in favor of Nabors
contravenes the fundamental policy of Louisiana if Nabors
had any negligence, fault, or strict liability in causing the personal injuries
to Fritz or Alms.  As the majority points
out, the jury found Nabors negligent in the Fritz
case, and Nabors has not shown that it was free from
negligence in the Alms case.  For
the purposes of this appeal, we must presume that Nabors
was at fault and that indemnity in favor of Nabors
violates the Louisiana Oilfield Anti-Indemnity Statute.  See La.
Rev. Stat. Ann. ' 9:2780.  Therefore,
the indemnity in favor of Nabors also violates
Louisiana=s fundamental policy as stated in
this statute.  See id. at
9:2780(A).  As the majority acknowledges,
the application of Texas law would result in the enforcement of this
indemnity.  The inescapable conclusion is
that the application of Texas law to the indemnity in favor of Nabors would be contrary to a fundamental policy of
Louisiana.  The majority=s conclusion to the contrary is
ill-founded.








Moreover, it is no answer to say the
policy of the two states is the same and that it is only the means of
implementing the policy that differs, particularly when those different means
yield entirely different ends.  Even the
most ingenious application of the Restatement test does not permit us to
embrace the stated policy (or some portion of it) as identical to our own and
simultaneously reject the means our sister state=s legislature crafted to implement
the policy.  That approach offends the
letter as well as the spirit of the Restatement test the Texas Supreme Court
has adopted for resolving conflict-of-laws issues.  See DeSantis,
793 S.W.2d at 677B78.   

Louisiana has a materially greater
interest than Texas in determining these issues.

The majority concludes that Louisiana
does not have a materially greater interest than Texas in determining Louisiana
oilfield indemnity issues.  After
referring to its analysis under section 188, the majority discusses two possible
purposes of the Louisiana Oilfield Anti-Indemnity Statute and one possible
purpose of the Texas Oilfield Anti-Indemnity Statute.  None of these three possible statutory
purposes are mentioned in these statutes or in any cited legislative history.  There is no value in speculating about possible
purposes for these laws that are not reflected in the statutes.  See
Nat=l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527 (Tex. 2000).

If this court determined that Louisiana law would apply under
section 188 in the absence of a choice-of-law provision, and that the
application of Texas law
would be contrary to a fundamental policy of Louisiana, then it almost
certainly would conclude that Louisiana has a materially greater interest than
Texas in determining whether the oilfield indemnity provisions in this case are
enforceable.  The Texas Supreme Court has
adopted a territorial approach to anti-indemnity statutes and has indicated
that the place of performance is of great importance in service contracts like
the drilling contract at issue in this case. 
See Maxus Exploration Co., 817 S.W.2d at 51B57. 
The territoriality concept woven through Maxus recognizes that
the place where the contract is to be performed has a substantial interest in
the resolution of legal issues relating to that performance.  See id. 
After all, every state has the right to define its own fundamental
public policy and to set the ground rules for implementing it, and it is this
right to govern conduct and set policy within its own borders C and in its own oilfields C that makes its interest materially
greater than another state=s interest.








It is hardly debatable that Louisiana
has a keen interest in making the rules that govern oilfield operations on its
lands and in protecting contracting parties engaging in drilling operations
there.  Given these considerations, the
court should find that Louisiana has a materially greater interest than Texas
in determining these issues.  See DeSantis, 793 S.W.2d at 679 (holding that, under ' 187(2)(b), Texas C the place where services were
performed C had a materially greater interest in
determining whether to enforce the noncompetition
agreement).  Certainly, the citizens of
this state can only hope that Louisiana courts would do the same if the roles
were reversed.  Undoubtedly, more than a
few Texas feathers would be ruffled were Louisiana courts to declare that
Louisiana has a materially greater interest in Texas oilfield drilling contract
issues than Texas.  Indeed, if the Texas
legislature passed a law that rendered certain contracts covering activity on
Texas soil void and unenforceable for fundamental policy reasons, would it
advance our state=s policy to allow those contracts as long as the parties went
beyond our borders to enforce them? 
No.  Would a neighboring state
have a materially greater interest in those contractual issues just because the
enforcement actions landed there? 
No.  Louisiana has the greater
interest in making the rules for operation of Louisiana oilfields,
including rules for such things as oilfield indemnities.  This territoriality approach not only follows
our high court=s path in Maxus, it preserves
the important principle of  comity
regarding other states= laws, a principle compromised by the court=s decision today.

 

 

For the reasons stated above, this
court should reverse and remand the granting of the motion for summary judgment
in Cause Number 14-00-00173-CV, the Alms appeal, and affirm the denial
of Nabors=s cross-claim in Cause Number 14-00-00580-CV, the Fritz
appeal.  

 

 

 

/s/        Kem Thompson Frost

Justice

 








Judgment rendered and Majority and Dissenting Opinions
filed November 21, 2002.  (Justices
Anderson, Fowler, Seymore, Guzman, and Senior Justice
McCloud joined the Majority Opinion. 
Senior Justice Wittig filed a dissenting
opinion in which Justices Yates, Hudson, and Frost joined.  Justice Frost filed a dissenting opinion in
which Justice Hudson and Senior Justice Wittig
joined.[8]  Justice Edelman filed a dissenting opinion.)

En Banc.

Publish C Tex.
R. App. P. 47.3(b).











 
 
 
 
 
 
 
 
 
 
 
 
 
  
 


Motion for En
Banc Rehearing in Cause No. 14-00-00173-CV Granted, Opinion of August 23, 2001,
Withdrawn, and Consolidated for En Banc Review with Cause No.  14-00-00580-CV; Judgment in Cause No.
14-00-00173-CV Affirmed, Judgment in Cause No. 14-00-00580-CV Reversed and
Remanded, and Majority and Dissenting Opinions filed November 21, 2002.

 

In The

Fourteenth Court of Appeals

 

NO. 14-00-00173-CV

 

CHESAPEAKE OPERATING, INC., Appellant

 

 

V.

 

 

NABORS DRILLING USA, INC., Appellee

 



 

On Appeal from the 239th District
Court

Brazoria County, Texas

Trial Court Cause No. 4251JG98-1

 



 

NO. 14-00-00580-CV

NABORS INDUSTRIES, INC., NABORS DRILLING USA, INC.,
NABORS LOFFLAND DRILLING CO., AND NABORS ENERGY SERVICES, INC., Appellants

 

 

V.

 

CHESAPEAKE OPERATING, INC. AND CHESAPEAKE ENERGY
CORP., Appellees

 



 

On Appeal from the 11th District Court

Harris County, Texas

Trial Court Cause No. 98-05525

 










E N  
B A N C   D I S S E N T I N G   O P I
N I O N

Of what use is a principle of law if
no one can be certain, or even confident, of its meaning?  How can people obey it?  How can businesses enter into contracts to
which the law applies with any expectation that they will be enforceable, let
alone profitable?  If the meaning of a
law is uncertain, is it law at all?

This case involves a single sentence
of a contract, the plain meaning of which is simple and undisputed.  Yet, because our courts choose to apply the
provisions of the Restatement on Conflict of Laws to determine whether that
choice of law sentence will be given legal effect, the time and resources for
extended litigation and over fifty pages of en banc opinions of this court have
had to be expended so far just to give the parties a deeply divided en
banc decision as to whether that one sentence of their contract will be
enforced as they agreed in this instance.  Because of reliance by the courts on the
Restatement=s method of weighing interests,
policies, and relationships, successive court decisions over the years have
done little to make the resolution of this issue more uniform or thereby lessen
the need for litigation over it.








Ultimately, the interests to be
balanced are straightforward: contracting parties= right to choose the law governing
their transactions versus states= sovereign right to govern business
activities conducted within their boundaries. 
The Restatement approach allows these respective interests to carry
greater or lesser weight in different contexts depending on the circumstances
(and thus practically assures that courts will reach inconsistent results).  But should they? If a state has the sovereign
power to govern contracts pertaining to some activities conducted within its
boundaries, how and why does it not have that power over all activities
conducted within it (that are not governed by federal law)?  Moreover, to the extent that the legislative
body and courts of a state have promulgated the laws to be followed in that
state, how can the courts of another state presume to decide, as the
Restatement method contemplates, that some of those laws are important enough
to be enforced with regard to activities in that state, but others are
not?  And why is adherence to the
Restatement approach so essential that such uncertainty in the law, and thus a
lack of law, is tolerated to perpetuate it?

To be sure, the uncertainty surrounding this issue is
completely the contracting parties=
doing.  As reflected in the majority and
other dissenting opinions in this case, the Restatement provisions essentially
provide that the choice of law made by the parties will be honored unless there
is a more compelling reason to apply the law of the state where the problem
arose.  Obviously, if parties want
certainty, they can simply specify that their contracts will be governed by the
law of the state in which the event giving rise to the indemnity obligation
occurs.  The Restatement provisions will
rarely, if ever, override that choice of law. 
Therefore, it is only because parties wish to gamble on selecting the
law of a different state that uncertainty is encountered.  But should we allow parties to repeatedly
deplete public resources to decide this wager for whichever of them happens to
be benefitted by it in each particular case?  And should such an involved decision-making
process be continuously conducted only to reach inconsistent and thus arbitrary
determinations?  Surely, the Restatement
method is not really the best that we, as judges, can do with such a
fundamental and pervasive question.  If
we cannot decide that the law of each state governs all, and not merely some,
of the activities conducted there (that are not subject to federal law), then
we can at least devise an approach that produces some other predictable result
so as not to continue to tie up the courts with this issue.                                                                                                                                                                                                                                                                        

/s/        Richard
H. Edelman

Justice

 








Judgment rendered and Majority and Dissenting Opinions
filed November 21, 2002.  (Justices
Anderson, Fowler, Seymore, Guzman, and Senior Justice
McCloud join the Majority opinion. 
Senior Justice Wittig filed a dissenting
opinion in which Justices Yates, Hudson, and Frost joined.  Justice Frost filed a dissenting opinion in
which Justice Hudson  and Senior Justice Wittig joined.[9]  Justice Edelman filed a dissenting opinion.)

 

En Banc.

 

Publish C Tex. R. App. P. 47.3(b).

 

 

 











[1]  The relevant
language of the provisions has been quoted in several other cases.  See, e.g., Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 351B52 nn.16B17 (Tex.
2000).  Because these cases do not
turn on the particular language of the indemnity clauses, we refrain from
including all 738 words here. 





[2]  Although our
record does not specifically indicate Alms=s
residence on the day of his accident, his testimony indicates he resided and
worked in Texas for some years both before and after the accident.





[3]  Although the
jury found both Nabors and Fritz negligent, because
it assessed eighty percent of the fault to Fritz, he was barred from recovering
against Nabors. 
See Tex. Civ. Prac. & Rem. Code  ' 33.001 (barring recovery by claimants whose
percentage of responsibility exceeds fifty percent).  The jury found Chesapeake (which had settled
with Fritz prior to the trial) not negligent. 
See id. at ' 33.003 (requiring jury question to include settling
parties).





[4]  The parties
have also engaged in related litigation in federal court in Louisiana.  Old Republic Ins. Co. v. Chesapeake
Operating Inc., No. 991270, 2000 WL 33399807 (W.D. La. Nov. 1, 2000) (not
designated for publication).  There, QPT=s insurer sought a declaration that Louisiana law
barred enforcement of mutual indemnity clauses between QPT and Chesapeake with
respect to the Fritz case. 
Although the Memorandum Ruling applied Louisiana law in an alternative
holding, the federal court held that (1) indemnity for Chesapeake was moot
because it had settled with Fritz, and (2) indemnity for Nabors
was unavailable as it had no indemnity contract with QPT. 





[5]  See Ken
Petroleum, 24 S.W.3d at 349 (citing legislative history that operators and
contractors requested amendment of Texas Oilfield Anti‑Indemnity Act to
make it less restrictive).





[6]  See, e.g.,
Koch Ref. Co. v. Chapa, 11 S.W.3d 153, 157 (Tex. 1999); Tovar v.
Amarillo Oil Co., 692 S.W.2d 469, 470 (Tex. 1985).





[7]  See, e.g.,
Clayton W. Williams, Jr., Inc. v. Olivo, 952
S.W.2d 523, 527 (Tex. 1997).





[8]  See, e.g.,
Ken Petroleum, 24 S.W.3d at 346 (reversing two appellate courts and holding
indemnity obligations enforceable to extent coverage and dollar limits applied
equally); Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505,
511 (Tex. 1993) (holding indemnity void because it was not conspicuous); Getty
Oil Co. v. Insurance Co. of N. America, 845 S.W.2d 794, 804 (Tex. 1992)
(holding Texas Oilfield Anti‑Indemnity Act inapplicable to additional
insured provision); Maxus Exploration Co. v. Moran Bros., Inc., 817
S.W.2d 50, 57 (Tex. 1991) (holding Kansas law applied to indemnity); Amerada
Hess Corp. v. Wood Group Prod. Tech., 30 S.W.3d 5, 13 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (affirming
indemnity for settlement amount as reasonable); 
Coastal Transp. Co. v. Crown Cent.
Petroleum Corp., 20 S.W.3d 119, 128 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (holding Texas
Oilfield Anti‑Indemnity Act inapplicable to suit by gasoline terminal
against trucking company); Ard v. Gemini
Exploration Co., 894 S.W.2d 11, 15 (Tex. App.CHouston
[14th Dist.] 1994, writ denied) (holding particular indemnity inapplicable to
personal injury claims).





[9]  Although
Chesapeake is an Oklahoma corporation, neither party asserts that Oklahoma law
applies.





[10]  Because of
this express holding, the court=s final note that A[w]e
express no opinion on whether the indemnity provisions at issue would be valid
under Texas law@ must refer only to the question whether the clauses
were supported by mutual insurance contracts. 
Maxus at 56B58.





[11]  The
Restatement alternatively provides that an express choice of law will be
enforced if the issue is one the parties could have resolved by explicit
agreement. Restatement ' 187(1).  Here
they could not, because Louisiana law (if applicable) would make these
indemnity agreements void.  See DeSantis, 793 S.W.2d at 678.  The Restatement also refuses to respect the
parties= choice of law if the chosen state has no substantial
relationship to the parties or the transaction. 
Restatement ' 187(2)(a). 
Here Texas does, as it is Nabors= principal place of business and the locus of part of
the contract negotiations.  See DeSantis, 793 S.W.2d at 678.





[12]  Oklahoma
enforces oilfield indemnity clauses if they (1) are unequivocally clear, (2)
result from an arm=s-length transaction between parties of equal
bargaining power, and (3) do not violate public policy.  Kinkead v. Western
Atlas Int=l,
Inc., 894 P.2d 1123, 1127 (Okla. Ct.
App. 1993) (enforcing oilfield indemnity). 
Because the Kinkead court enforced an
oilfield indemnity clause, and because Chesapeake designated Oklahoma law to
govern its indemnity contract with QPT, such clauses do not appear to violate
Oklahoma public policy.





[13]  The location
of the contract=s subject matter is Asignificant@ when Athe contract deals with a specific physical thing,
such as land or a chattel, or affords protection against a localized risk.@  See Restatement ' 188 cmt. e.  Assuming it applies to service contracts, it
does not appear to differ from the Aplace of
performance.@  See DeSantis, 793 S.W.2d at 679 (finding both factors
pointed to Texas in services contract performed there); Diesel Serv. Co. v. AMBAC Int=l Corp., 961
F.2d 635, 641 (7th Cir. 1992), overruled on other grounds by Generac Corp. v. Caterpillar Inc., 172 F.3d
971, 974B75 (7th Cir. 1999) (finding analysis same for both
factors under ' 188). 





[14]  Although even
Chesapeake cites Hughes as dispositive on this
point, Justice Wittig finds it inapplicable because
the Aparticular issue@ in Hughes
was covered by a separate section in the Restatement.  Post at __.  In other words, he would separately consider
the substantive issue only if it is among the nineteen issues listed in
Restatement sections 189 to 207.  Neither
Hughes nor the Restatement suggest any such limitation: AThe courts have long recognized that they are not
bound to decide all issues under the local law of a single state. . . . Each
issue is to receive separate consideration if it is one which would be
resolved differently under the local law rule of two or more of the potentially
interested states.@  See Restatement ' 188 cmt.  d (emphasis added).  Moreover, the supreme court in Maxus would
not have mentioned two options if one (the place of performance of the
indemnity) was irrelevant absent its own separate section in the Restatement.





[15]  Our analysis
does not necessarily Adivide[ ] the law applicable to indemnity and the
underlying insuring agreement,@ as Justice Wittig suggests.  Post at __.  The Restatement does not apply the law
of a state where the insured risk is located Awhen the
contract would be invalid under the local law of the state of principal
location but valid under the local law of another state with a close relation
to the transaction and the parties.@  See Restatement
' 193 cmt. d.  Because Texas has such a close relation, we
believe this exception applies.





[16]  We disagree
with Justice Frost that by focusing on the indemnity clause (the particular
issue), the place of performance Apoints
to no particular state.@  Post at
__.  In Maxus, there is no
indication that at the time of contracting the parties knew they would be sued
in Kansas, yet the supreme court considered the defense of an injured worker=s suit there as a Aperformance@ pointing to that state.  See Maxus, 817 S.W.2d at 54.  The Restatement does accord less weight to
contacts to the degree they are Auncertain
or unknown@ at the time of contracting.  See Restatement
' 188 cmt. e.  But it discounts them only when they are Apurely fortuitous.@  Id. (suggesting place of contracting
is of no significance when one party happens to mail acceptance from a railroad
station).





[17]  See, e.g.,
Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313, 315 (5th Cir. 1990)
(holding contract in that case consisted of both blanket agreement and later
work orders).





[18]  We also disagree
with our dissenting colleagues that the Restatement=s focus on the
particular issue in dispute will invite forum shopping.  It seems very unlikely that many plaintiffs
will pick a venue solely to manipulate the enforceability of the defendants= mutual indemnity
obligations.  Indeed, it is not clear plaintiff=s counsel will even know about such clauses before filing
suit.





[19]  See, e.g.,
Roberts v. Energy Dev. Corp., 235 F.3d 935, 943 (5th Cir. 2000) (applying
Louisiana law to void indemnity owed by Louisiana contractor when most work was
performed in Louisiana); Thomas v. Amoco Oil Co., 815 F. Supp. 184, 187
(W.D. La. 1993) (applying Louisiana law to void indemnity owed by Louisiana
contractor even though all work was performed in Texas); Lyons v. Turner Constr. Co., 551 N.E.2d 1062, 1063 (Ill. App. Ct. 1990)
(applying Illinois law to void indemnity owed by Illinois contractor even
though all work was performed in Texas); Chrysler Corp. v. Skyline Indus. Servs., Inc., 528 N.W.2d 698, 707 (Mich. 1995)
(applying Michigan law to enforce indemnity between Michigan companies who
chose Michigan law, even though all work was performed in Illinois); Reagan
v. McGee Drilling Corp., 933 P.2d 867, 868 (N.M. Ct. App. 1997) (applying
Texas law to enforce indemnity between Texas contractors who chose Texas law,
even though all work was performed in New Mexico); Finucane
v. Interior Constr. Corp., 695 N.Y.S.2d 322, 324B25 (N.Y. App. Div. 1999) (applying Oklahoma law to
enforce indemnity in favor of Oklahoma contractor when parties chose Oklahoma
law, even though all work was performed in New York); cf. Scott v. DelMar Offshore Servs., Inc.,
943 F. Supp. 764, 768B69 (S.D. Tex. 1996) (applying Louisiana law to void
indemnity between Texas companies who chose Texas law because federal Outer
Continental Shelf Lands Act required application of Louisiana law); but see
Tucker v. R.A. Hanson Co., Inc., 956 F.2d 215, 218B19 (10th Cir. 1992) (applying New Mexico law to void
indemnity executed in California choosing California law, as all work was
performed in New Mexico); Palmer G. Lewis Co., Inc. v. Arco Chem. Co.,
904 P.2d 1221, 1227 (Alaska 1995) (applying Washington law to void indemnity
contract because contract was negotiated and performed there, without
mentioning domicile of any party); Donaldson v. Fluor
Engineers, Inc., 523 N.E.2d 1113, 1116 (Ill. App. Ct. 1988) (applying
Illinois law to void indemnity owed by Louisiana contractor because all work
was performed in Illinois, even though parties chose California law).





[20]  Unlike the
cases before us, the personal injury and indemnity claims were all filed in
Louisiana.  Roberts, 235 F.3d at
936.  Because both the oilfield and the
litigation services occurred in Louisiana (as in Maxus), it did not
matter whether the place of performance was the former or the latter.  Rather than reading the case for what Justice
Frost says  it Aseems to indicate,@ post
at __, we instead rely on what the Fifth Circuit said was decisiveCdomicile.





[21]  We disagree
with Justice Frost=s reliance on Gorsalitz
v. Olin Mathieson Chem.Corp.,
429 F.2d 1033 (5th Cir. 1970).  That case
did not concern oilfield indemnity clauses, and did not address the Maxus options
for Aplace of performance@ because
it was issued before Maxus, indeed even before the second Restatement
itself was published.  It is hard to see
why Gorsalitz is more persuasive than Roberts,
as only the latter is (1) a recent application (2) of the current Restatement
(3) in the context of the Texas and Louisiana oilfield indemnity statutes. 





[22]  Post at
__.





[23]  Post at
__.





[24]  Justice Frost=s complaint that our analysis Aeffectively withdraws protections for Texas
contractors working in states that have more stringent anti-indemnity statutes
than Texas,@ post at __, is perplexing, as (1) it is her
analysis (not ours) that would do so in this case, and (2) it assumes Texas
contractors should be protected from their own agreements and their own
legislature.





[25]  Our dissenting
colleagues confuse our reliance on the parties=
indemnity and insurance agreements with reliance on the choice-of-law
provision.  The careful reader will note
we rely in our section 188 analysis only on the former.  One cannot analyze justified expectations or
the policies underlying contract law without looking at what the parties= contract provided.





[26]  There is no
evidence that Chesapeake was Aphysically present@ in
Louisiana, as suggested by Justice Wittig.  Post at __.





[27]  Post at
__.





[28]  Webster
defines Afoster@ as Ato bring up with parental care; to promote the growth
or development of,@ and Afoist@ (used in the Louisiana statute) as Ato introduce or insert surreptitiously or without
warrant; to force another to accept esp[ecially] by stealth or deceit.@  Webster=s third new international
Dictionary 881, 897 (1993).  Whatever the correct choice of law, the
Louisiana Legislature has probably made the better choice of words.  





[29]  The same is
true of Justice Wittig=s
suggestion that policies contravene if they encourage parties to circumvent
application of one state=s law.  Post
at __.  The only reason for a
choice-of-law clause is to avoid application of some other law.  Nothing in the Restatement suggests an intent
to ban such efforts entirely.





[30]  See Ridings
v. Danos & Curole
Marine Contractors, Inc., 723 So.2d 979, 983 n.2 (La. Ct. App. 1998).





[31]  Texas law
impacts the initial contracting stageCan
indemnity contract must be mutual and supported by liability insurance when it
is entered.  Tex. Civ. Prac.
& Rem. Code ''
127.001-.005.  Louisiana law impacts the
final resolution stageCan indemnity contract becomes void only when a party
is found negligent at trial.  La. Rev. Stat. 
Ann. ' 9:2780(A); Meloy
v. Conoco, Inc., 504 So.2d 833, 839 (La.
1987).  Texas law limits overreaching by
making powerful negotiating parties add a provision that gives as good an
indemnity as they get; Louisiana limits overreaching by striking any provision
for indemnity of a party=s own negligence. 
Texas law does not protect weaker negotiating parties from having to pay
additional insurance premiums; Louisiana law does not protect weaker
negotiating parties from having to pay another=s
defense costs when neither is negligent.





[32]  Post at
__.





[33]  Amoco Prod.
Co. COG-EPCO 1992 Ltd. P=ship v. Lexington Ins. Co., 745 So.2d 676, 680 (La. Ct. App. 1999).





[34]  See, e.g., Verdine v. Ensco Offshore Co.,
255 F.3d 246, 254 (5th Cir. 2001); Roberts, 235 F.3d at 943-44; Matte
v. Zapata Offshore Co., 784 F.2d 628, 631 (5th Cir. 1986); Meloy v. Conoco, Inc.,
504 So.2d 833, 839 (La. 1987); Lexington Ins. Co., 745 So.2d at 677.





[35]  Given our
analysis of these policies, we do not mean to suggest that choice of law
agreements in indemnity contracts are per se enforceable.  But the Aabsent
some agreement@ condition in Maxus renders overbroad Justice
Frost=s statement that the supreme court in Maxus Aadopted a territorial approach to anti-indemnity
statutes.@  Post at
__. 





[36]  Senior
Justices Don Wittig and Austin McCloud sitting by
assignment.





[1]  All members of
this court agree:  (1) Restatement of
Conflicts section 187 determines whether the parties= contractual choice of Texas law is permissible.  See Maxus Exploration Co. v. Moran Bros.,
Inc., 817 S.W.2d 50, 53 (Tex. 1991); (2) No indemnity is payable if
Louisiana law governs these two Drilling Contracts.  See La.
Rev. Stat. Ann. ' 9:2780(A) (West Supp. 2001) (declaring null and void
and against public policy of the state of Louisiana any indemnity provision
that protects an indemnitee from the consequences of
its own negligence or strict liability); (3) Indemnity is proper if application
of Texas law is also proper.  See Tex. Civ. Prac. & Rem. Code Ann.
'' 127.003, 127.005 (Vernon 1997) (allowing indemnity
agreements if indemnity obligation supported by insurance); (4) The indemnity
clauses in the Drilling Contracts at issue meet fair notice requirements
required under Texas law.  See Dresser
Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 511 (Tex. 1993)
(holding indemnity void because it was not conspicuous); (5) The parties could
not have resolved the issue of indemnification by explicit agreement.  See
Restatement ' 187 cmts. c, d (capacity,
formality, substantial validity are some examples of items not resolvable by
agreement); and (6) The State of Texas does not lack a substantial relationship
to the parties or the transactions at issue. 
Id. at ' 187(2)(a) (requiring application of law chosen by
parties unless law chosen does not bear a substantial relation to transaction
or parties).





[2]  The ability to
prospectively avoid Louisiana law is reduced by the lack of certainty regarding
the venue chosen for the underlying personal injury suit.  This latter uncertainty, however, is itself a
creature of the majority opinion.  If the
indemnity obligation is not split away from the contract as a Aparticular issue,@ Texas
courts, following Maxus, would nearly always apply Louisiana law and
thereby prevent the wholesale avoidance of Louisiana=s worker protections.





[3]  As we discuss
below in part III of our opinion, examining indemnities in a vacuum also
undermines proper analysis under Restatement sections 6 and 188(2).  





[4]  One federal
court, in related litigation, agrees with our reasoning.  See Old Republic Ins. Co. v. Chesapeake
Operating, Inc., No. 991270, 2000 WL 33399807 (W.D. La. Nov. 1, 2000) (not
designated for publication).  While
judicial estoppel does not apply, comity would
suggest our ruling be consistent, unless against a greater public policy
interest of Texas.  We do not believe two
corporations arguing over attorney=s fees
is such a policy interest. 





[5]  The court
held:

 

The court of appeals erred in failing to consider
section 184=s application to the exclusive‑remedy
issue.  The Court has often applied more
specific sections of the Restatement to address particular choice of law
issues.  See, e.g., Purcell v. Bellinger, 940 S.W.2d 599, 601 (Tex. 1997) (applying
section 93 to evaluate the res judicata
effect of an out‑of‑state judgment); Ford Motor Co. v. Leggat, 904 S.W.2d 643, 647 (Tex. 1995) (applying
section 139 to determine whether another state=s
attorney‑client privilege should apply in a Texas court case); Maxus
Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 53B54 (Tex. 1991) (invoking section 196 to determine the
law governing contracts for personal services); DeSantis
v. Wackenhut Corp., 793 S.W.2d 670, 677B78 (Tex. 1990) (adopting section 187 for evaluating
the enforceability of contractual choice of law clauses).

 

Hughes, 18
S.W.3d at 206, 206 fn.2. 





[6]  Section 188(2)
provides:

 

In the absence of an effective choice of law by the
parties (see section 187), the contacts to be taken into account in applying
the principles of section 6 to determine the law applicable to an issue
include:

 

(A)       the place of contracting;

(B)        the place of negotiation of the contract;

(C)       the place of performance;

(D)       the location of the subject matter of the contract; and

(E)        the
domicile, residence, nationality, place of incorporation and place of business
of the parties.





[7]  It is for this
reason any reference to the sophistication and economic size of the contracting
parties is inapposite.  Whether a company
is large or small is immaterial since, under section 187, if the public policy
is strong enough, all private persons are prohibited from choosing law.  Cf. DeSantis,
793 S.W.2d at 678B80 (no mention of parties= sophistication or size in analysis).





[8]  The
expectation of Louisiana law to the exclusion of Texas law would not be
reasonable either.





[9]  One must
wonder, were we addressing an Alaskan salmon cannery accident, would Texas cast
such extra territorial reach.





[10]  There will be
no certainty even after the suit is filed if insurance coverage is contested.





[11]  In mid-March,
2002, for example, Nabors bought Enserco
Energy Services Co., Inc., a Canadian enterprise owning 193 service rigs and 30
drilling rigs.  Indemnity obligations for
all suits arising out of accidents at Enserco wells
would be potentially subject to the Texas oilfield anti-indemnity act and Texas
enforcement regardless of the accident situs.





[12]  Maxus
determined which state=s law applied absent choice by the parties, the same
inquiry required under section 6.





[13]  The majority
incorrectly interprets the Aextraterritorial@
reference in Maxus to refer to the domicile of the litigants, rather
than the location of the oil well. 





[14]  Nabors=s argument is further undermined by recent
reincorporation in Bermuda.  See Nelson
Antosh, Five firms answer call of islands, Houston Chronicle, April 21, 2002, at
A1, A16. 





[15]  Senior
Justices Don Wittig and Austin McCloud sitting by
assignment.





[1]  See Restatement (Second) of Conflict of Laws
' 6(2)(g) & cmt. (j). 





[2]  The Roberts
court refused to enforce the parties=
choice-of-law provision and held that the Louisiana anti-indemnity statute
applied.  See id. at 938B44.  This was a
correct holding.  Although there are
comments in the Roberts case that support the majority=s emphasis on the citizenship of the contracting
parties, these comments are not necessary to the holding in that case.  See Roberts, 235 F.2d at 942B43.  The Roberts
court distinguished the Fifth Circuit=s prior affirmance, without opinion, of an unpublished decision in American
Ins. v. Apache Corp.  See id.
at 943; American Ins. v. Apache Corp., 95 F.3d 1149 (5th Cir. 1996)
(unpublished table decision).  Though
Roberts indicates that American Ins. involved two Texas contractors,
it is difficult to evaluate American Ins. and the Roberts court=s discussion of it, because there is no opinion from
the Fifth Circuit in American Ins. and because the district court=s opinion is unpublished and not available on
electronic databases.  See American
Ins., 95 F.3d at 1149.  To the extent
that Roberts supports an analysis based on the citizenship of the
contracting parties, it is unpersuasive for the reasons explained below. 





[3]  According to
the majority, the Maxus court held that the Aease in determination and application of the law to be
applied@ (the seventh principle in ' 6 of the Restatement) points to applying the law of
the state where the injured party brought suit. 
See ante, slip op. at p.18B19.  The Maxus court did not so hold;
rather it stated that AKansas law is easily determined and applied.@  Maxus
Exploration Co., 817 S.W.2d at 57.   





[4]  As noted in
the majority opinion, both lawsuits consolidated into this appeal involved the
same International Association of Drilling Contractors drilling contract.





[5]  The majority
asserts that the only reason for a choice-of-law clause is to avoid application
of some other law.  See ante,
slip op. at p.20, n.29.  Though that may
be a motivating factor in many cases, there are other reasons for including
such clauses in contracts, for example, to avoid uncertainty about which
jurisdiction=s law will apply when a contract involves contacts
with many different jurisdictions.  See
DeSantis, 793 S.W.2d at 677.  Nevertheless, even if we presume that the
only reason Nabors and Chesapeake included the
choice-of-law provision in their drilling contracts was to avoid the
application of Louisiana law, that still does not settle the justified
expectations issue.  





[6]  Under the
majority=s approach, this would appear to be the result in
every conflict-of-laws analysis for an indemnity provision.





[7]  Of course, our
function is not to question the wisdom of the anti-indemnity statutes; rather,
we must apply them as written.  See
Nat=l Liab. & Fire Ins. Co.
v. Allen, 15 S.W.3d 525, 527 (Tex.
2000); Lee v. City of Houston, 807 S.W.2d 290, 293 (Tex. 1991).  Several parts of the majority opinion indicate
that the majority views these statutes with disfavor.  For example, the majority speculates that the
Texas Supreme Court favored Kansas law in Maxus to avoid invalidating
the indemnity under the Texas Oilfield Anti-Indemnity statute.  See ante, slip op. at p. 15.  The Maxus opinion contains nothing
that would support this speculation and, in any event, this court should decide
this case without regard to any view it may have of the wisdom of
anti-indemnity statutes.  See Nat=l Liab. & Fire Ins. Co., 15 S.W.3d at 527; Lee, 807 S.W.2d at
293.  





[8]  Senior
Justices Don Wittig and Austin McCloud sitting by
assignment.





[9]  Senior
Justices Don Wittig and Austin McCloud sitting by
assignment.